*In re* HOFFMAN.

OPINION OF THE COURT.

1. CONTEMPT—FEDERAL CASE—RETROACTIVE APPLICATION—CONSTITUTIONAL LAW.

Application of the rule of a Federal case decided 15 months after conviction of attorney of contempt for refusal to proceed with an appeal after his appointment as appellate counsel was a violation of the attorney's constitutional rights, where no Federal question was involved in the contempt proceeding.

2. SAME—APPOINTED COUNSEL—REFUSAL TO PROCEED WITH APPEAL—ETHICAL POLICIES.

An attorney, appointed as appellate counsel, who refuses to file an appeal on behalf of his indigent criminal client but files a report and testifies that he has made a complete search of the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 17 Am Jur 2d, Contempt §§ 5-8, 11, 25, 27, 86.
[2] 21 Am Jur 2d, Criminal Law §§ 321, 322.
[3, 4] 16 Am Jur 2d, Constitutional Law § 48.
[4] 20 Am Jur 2d, Courts §§ 233-236.
[5, 8] 7 Am Jur 2d, Attorneys § 148.
Right of defendant in criminal case to discharge of, or substitution of other counsel for, attorney appointed by court to represent him. 157 ALR 1225.
[6] 21 Am Jur 2d, Criminal Law §§ 319, 322.
[7] 5 Am Jur 2d, Appeal and Error § 545; 7 Am Jur 2d, Attorneys §§ 143, 144.
[9] 5 Am Jur 2d, Appeal and Error § 726.
[10] 21 Am Jur 2d, Criminal Law § 321.
[11] 16 Am Jur 2d, Constitutional Law § 48.
[12] 21 Am Jur 2d, Criminal Law § 322.
Right of indigent defendant in criminal case to aid of state as regards new trial or appeal. 55 ALR2d 1072.
[13] 20 Am Jur 2d, Courts § 85; 21 Am Jur 2d, Criminal Law § 322.
[14] 17 Am Jur 2d, Contempt § 25.
[15] 20 Am Jur 2d, Courts § 79.
[16] 7 Am Jur 2d, Attorneys § 93; 21 Am Jur 2d, Criminal Law § 321.
[17, 18] 7 Am Jur 2d, Attorneys § 143.
[19] 17 Am Jur 2d, Contempt § 25.

record and found nothing which was a reasonable or even arguable possibility of error, properly relies upon the Court's ethical policies and the canon of ethics in declining to proceed with an appeal.

3. SAME—REFUSAL TO REPRESENT INDIGENT—APPEAL AND ERROR—CONSTITUTIONAL LAW—APPEAL AS OF RIGHT.

A judgment of contempt against an attorney who refused to proceed with an appeal on behalf of a criminal defendant for whom the attorney was appointed appellate counsel is error when based on the view that the 1963 constitutional provision which granted appeal as a matter of right in every criminal prosecution became applicable retroactively to the 1962 judgment and conviction of the criminal defendant (Const 1963, art 1, § 20).

4. APPEAL AND ERROR—CONTEMPT—CONVICTION—RETROACTIVE APPLICATION OF CASE.

It was error for the Court of Appeals to apply the rule of a case decided 2 years after an attorney was convicted of contempt to justify its judgment of conviction for an act which, when done, was lawful.

5. ATTORNEY AND CLIENT—APPOINTED COUNSEL—WILLING COUNSEL—WITHDRAWAL—COURT'S PERMISSION.

Substitution of willing appellate counsel in place of unwilling appellate counsel by the trial court provides an indigent defendant with better and more prompt service and certainly as effective counsel as that provided for in the Federal decisions requiring appointed counsel to file a brief on applicable law and facts and request permission to withdraw from the case if it is thought to be frivolous; the Court of Appeals erred in failing to perceive the merits of the willing counsel system of appointment.

6. SAME — CONSTITUTIONAL LAW — APPOINTED COUNSEL — WILLING COUNSEL — WITHDRAWAL.

The constitutional practice of appointing willing counsel to represent indigent criminal defendants is to be preferred over the Federal procedure which requires appointed counsel to file a brief referring to anything that might arguably support an appeal before requesting the court's permission to withdraw from an indigent's case.

7. Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ—Qᴜᴇsᴛɪᴏɴs Rᴇᴠɪᴇᴡᴀʙʟᴇ—Aᴘᴘᴏɪɴᴛᴇᴅ Cᴏᴜɴsᴇʟ—Fᴀɪʟᴜʀᴇ ᴛᴏ Asᴋ Cᴏᴜʀᴛ's Pᴇʀᴍɪssɪᴏɴ ᴛᴏ Wɪᴛʜᴅʀᴀᴡ.

An attorney's failure to ask the circuit judge to release the attorney from an order appointing him appellate counsel for an indigent criminal defendant is not an issue reviewable on appeal of a contempt conviction where that issue was not raised in circuit court.

8. Aᴛᴛᴏʀɴᴇʏ ᴀɴᴅ Cʟɪᴇɴᴛ—Aᴘᴘᴏɪɴᴛᴇᴅ Cᴏᴜɴsᴇʟ—Sᴜʙsᴛɪᴛᴜᴛɪᴏɴ ᴏꜰ Aᴛᴛᴏʀɴᴇʏ—Mᴏᴛɪᴏɴ ᴛᴏ Wɪᴛʜᴅʀᴀᴡ—Dɪsᴄʜᴀʀɢᴇ ᴏꜰ Pʀɪᴏʀ Aᴛᴛᴏʀɴᴇʏ.

Appointment of appellate substitute counsel by the circuit judge without requiring previously appointed counsel to file a motion for leave to withdraw is an effective and proper substitution of attorneys which obviates the need for a motion for leave to withdraw and discharges previously appointed counsel of duty to the indigent criminal defendant.

9. Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—Aᴘᴘᴏɪɴᴛᴇᴅ Cᴏᴜɴsᴇʟ—Dᴜᴛʏ ᴛᴏ Aᴘᴘᴇᴀʟ—Fʀɪᴠᴏʟᴏᴜs Cʟᴀɪᴍ.

Cases cited which present for determination the constitutional rights of persons accused or convicted of crime are not apposite when consideration of the whole record indicates that the trial judge wanted to pose for appellate review just one issue, that being the duty of appointed counsel to appeal on grounds assigned by indigent defendant no matter the sophistry or frivolity thereof.

10. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Aᴘᴘᴏɪɴᴛᴇᴅ Cᴏᴜɴsᴇʟ—Cᴏᴜʀᴛ Rᴜʟᴇs—Fʀɪᴠᴏʟᴏᴜs Cʟᴀɪᴍ—Nᴏ Dᴜᴛʏ ᴛᴏ Aᴘᴘᴇᴀʟ.

The former and now extinct court rule requiring appointment of counsel for indigent convicts to prepare delayed motions for postconviction proceedings in the trial court and to prepare application for leave to take delayed appeal did not require appointed counsel to proceed on grounds determined to be frivolous (GCR 1963, 785.4[2]).

DɪssᴇɴᴛɪɴG Oᴘɪɴɪᴏɴ.

T. M. Kᴀᴠᴀɴᴀɢʜ and Aᴅᴀᴍs, JJ.

11. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Aᴘᴘᴇᴀʟ ᴀs ᴏꜰ Rɪɢʜᴛ—Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Pʀᴏᴠɪsɪᴏɴ—Rᴇᴛʀᴏᴀᴄᴛɪᴠɪᴛʏ.

*A defendant who in 1965 wishes to appeal his 1962 criminal conviction must seek application for leave to appeal because at the time of conviction defendant had no appeal as a mat-*

ter of right and the 1963 Constitution which provided an
appeal as a matter of right did not apply retroactively
(Const 1908, art 2, § 19; Const 1963, art 1, § 20).

12. ATTORNEY AND CLIENT—COURTS—APPOINTMENT OF APPELLATE
COUNSEL—CONSTITUTIONAL LAW.

Appointment of appellate counsel in 1965 by the circuit court
must have proceeded under the appropriate provision of the
1963 Constitution which provides that reasonable assistance
may be granted to perfect and prosecute an appeal when the
trial court so orders, a provision which does not materially
differ from a similar provision in the 1908 Constitution (Const
1908, art 2, § 19; Const 1963, art 1, § 19).

13. CRIMINAL LAW—REQUEST FOR APPOINTMENT OF COUNSEL—COURT
RULES—RETROACTIVE APPLICATION.

Court rule relative to taking delayed appeals in criminal cases
applied restrospectively by specifying procedures for furnish-
ing appellate counsel and free transcripts to indigents in
criminal cases completed prior to its effective date; hence,
an indigent defendant who was convicted and sentenced in
1962 but sought appointed counsel in 1965 to pursue an appeal
was entitled to court-appointed counsel so that an appeal
could be prosecuted under the then existing court rule (GCR
1963, 785.4[2]).

14. CONTEMPT—ATTORNEY—REFUSAL TO PROSECUTE AN APPEAL—
NONCOMPLIANCE WITH ORDER OF COURT.

Attorney is guilty of contempt where he refuses to comply with
a lawful order of circuit court to file a delayed motion for
a new trial and, upon its denial, to file a motion for a delayed
appeal on behalf of an indigent defendant (GCR 1963, 785.4
[2]).

15. COURTS—JUDGES—POWER TO APPOINT APPELLATE COUNSEL FOR
INDIGENTS.

A circuit judge has been empowered to appoint appellate counsel
to perfect and prosecute an appeal, and where a court rule
made it incumbent upon the circuit judge to appoint counsel
for an indigent defendant, the judge's order appointing de-
fendant attorney as appellate counsel for the indigent was a
valid and lawful order (Const 1908, art 2, § 19; Const 1963,
art 1, § 20; GCR 1963, 785.4[2]).

16. Attorney and Client—Court-Appointed Attorney—Standard
of Effectiveness.

*An attorney having accepted an appointment as appellate counsel
must meet the same constitutional standard of effectiveness
whether the appeal is in the nature of an application for
leave to appeal or as of right (GCR 1963, 785.4[2]).*

17. Same—Indigent Criminal Defendant—Court-Appointed At-
torney—Withdrawal.

*Withdrawal from representation of an indigent criminal de-
fendant by a court-appointed attorney requires that the ap-
pointing court concur in the attorney's approach and evalua-
tion of the case.*

18. Same—Appointed Counsel—Refusal to Prosecute and Appeal
—Guideline for Withdrawal.

*Court-appointed counsel for indigent defendants convicted of
crime must take an active role in assisting the client, but
such counsel may, if he finds the case to be wholly frivolous
after a conscientious examination, advise the court and request
permission to withdraw after submitting a full and complete
brief, rather than a no-merit letter, which brief discusses
facts, law, and issues which might arguably support the ap-
peal, and thereupon the court, after giving the indigent de-
fendant an opportunity to be heard and after concluding a
full and complete examination, may decide the appeal is
frivolous if there is no contention raised which is reasonably
arguable.*

19. Same—Order Appointing Counsel—Refusal to Obey—Con-
tempt.

*An attorney who admits that an order appointing him as an
indigent's counsel was valid and lawful but who fails to file
a brief with the court giving applicable law or facts and does
not request to be relieved of the order of appointment and
does not consult with either the indigent defendant or trial
counsel cannot be considered an effective appellate counsel
and may properly be subject to disciplinary proceedings of
contempt.*

Appeal from Court of Appeals, Division 3,
Fitzgerald, P. J., and Burns and Holbrook, JJ.,
affirming Allegan, Smith (Raymond L.), J. Sub-

mitted November 15, 1968. (Calendar No. 19, Docket No. 51,959.)  Decided June 2, 1969.

9 Mich App 342, reversed.

Leo W. Hoffman was adjudged in civil contempt of court.  Respondent appealed to Court of Appeals. Affirmed.  Respondent appeals.  Reversed.

*George A. Greig,* Prosecuting Attorney, and *James S. Ainsworth,* Chief Assistant Prosecuting Attorney, for the people.

*Leo W. Hoffman, in propria persona.*

BLACK, J. *(for reversal).*  As this originally simple and altogether local proceeding came to appellate decision (9 Mich App 342), both its nature and issue as framed, tried and decided in circuit were subjected errantly to the influence of Federal law attending a conjectured but quite nonexistent Federal question.  Now, and until this Court restores to its pristine posture what in the Court of Appeals became a curiously new-blown Federal case, no thought of affirmance may be entertained without offense to yet another constitutional right, that of a respondent charged with and convicted of contempt of a Michigan court to have his conviction reviewed without the application *ex post facto* of the rule of a Federal decision which, aside from its irrelation to such a proceeding, was handed down some 15 months after that respondent's conviction was adjudged in circuit and he had timely claimed right of appeal.[1]

---

[1] Justice Cooley's consideration and definition of *ex post facto* laws remains as valuable today as when written.  Under the heading of "Ex Post Facto Laws.—" (General Principles of Constitu-

· Here we review for error no criminal prosecution. No defendant charged with or convicted of crime stood before either of the courts below. None stands here. No Federal constitutional right, advanced on behalf either of the accusing judge or the respondent attorney, is at stake. The rights of no accused person or of any convict are called into play by him, or on his behalf. Our forthcoming judgment will determine no issue arising under the Constitution of the United States, or under any act of Congress, or treaties made, with respect to which the Supreme Court is given supreme interpretive authority by US Const, art 6. That judgment will simply determine whether, upon a record made in a circuit court of *Michigan,* before a circuit judge of *Michigan,* a member of the *Michigan* bar was properly judged— under *Michigan* law—guilty of contempt of that same court of *Michigan.*[2]

---

tional Law by Thomas M. Cooley [3d ed], by Andrew C. McLaughlin, 1898, page 313) the Justice added *inter alia* the following to the durable classification of *ex post facto* laws that was written in *Calder* v. *Bull* (1798), 3 US 386, 390 (1 L Ed 648):

"5. Every law which, assuming to regulate civil rights and remedies only, in effect imposes a penalty or the deprivation of a right for something which when done was lawful."

2 The pertinent nature of Michigan contempt proceedings was summarized in the "committee comment," appearing below RJA 1701 (See Stat Ann 1962 Rev § 27A.1701, p 355). This connected portion is demonstrative:

"The courts originally had difficulty in defining the nature of contempt proceedings. Nearly any definition which it might choose ran into limitations to which the court did not wish to subject the contempt power. In the case of *In re Smith* (1906), 144 Mich 39, the court held that contempt proceedings were not actions at law within the reasonable construction of the statute but were instead special summary proceedings entirely independent and distinct from the suit in which the contempt was committed. In the case of *People* v. *Yarowsky* (1926), 236 Mich 169, the court decided that contempt proceedings were not criminal proceedings as they were not intended to punish breaches of the criminal law but were instead designed to maintain the dignity of the court. Contempt proceedings were said not to be criminal proceedings but proceedings partaking of a criminal nature and this was further demonstrated by the fact that the right to punish contempts is not limited to the criminal courts but may be exercised by a court sitting in a purely civil capacity."

These beginning postulates suggest that the proceeding under review should be ordered from exalted heights down to the comparatively pastoral legal environment of Allegan county. There the accusing judge, all credit to him, undertook only to determine whether the respondent attorney was, by the gauge of exclusively applicable Michigan law, guilty of contempt of one of our circuit courts for 1 simply assigned reason, reflected this way in the judgment entered in circuit and brought now to review:

"1. That on May 27, 1965, an order was made by this court appointing Leo W. Hoffman, a duly licensed attorney at law, appellate counsel in the matter of The People of the State of Michigan *v.* Ernest B. Sandefur, criminal file No. 4068, Allegan county circuit court.

"2. That the said Leo W. Hoffman, well knowing the terms of the said order, did, in a report filed in this court, refuse to prepare and file an appeal for the said Ernest B. Sandefur, giving as his reason therefor, that he was unable, after careful examination, to find any ground for an appeal.

"3. That such refusal to prepare and file an appeal as guaranteed by the Constitution of the State of Michigan 1963, particularly article 1, § 20, and GCR 1963, 785, constitutes a violation of a valid order of this court, and that a refusal to proceed as directed constitutes contempt of this court."

Like all judges of the courts of the States, Judge Smith knew naught then of *Anders* v. *California* (May 8, 1967), 386 US 738 (87 S Ct 1396, 18 L Ed 2d 493). That case had not as yet been Federally conceived. The conception did not take place until certiorari was granted April 4, 1966, 383 US 966 (86 S Ct 1278, 16 L Ed 2d 307).

*First: Judged exclusively by the record made
by and before Judge Smith, was the
respondent contemptuous?*

By way of purposeful preamble the indorsers of this opinion approach consideration of the recorded facts exactly as they were developed by and made to appear before Judge Smith between June of 1962 and February of 1966, uncolored by any subsequently written judicial opinion. Declared another way, we consider the record as if this Court stood judicially in Judge Smith's shoes on and prior to February of 1966, with no opinion of *Anders* v. *California* and no opinion of Mr. Hoffman's appeal to the Court of Appeals known to us, and with no issue framed and submitted for decision save that which the judge decided per quotation above. As we perceive, this is the sure way to avoid the after-witted error of applying a respectable yet elective Federal intervenient to a not very difficult question of local law.

In June of 1962 one Ernest B. Sandefur was charged in Allegan county with first-degree murder. John B. Nahan, a reputable member of the Allegan county bar, was promptly engaged to represent him. Upon Mr. Nahan's advice the defendant stood mute. A plea of not guilty was entered. Two months later the defendant appeared with counsel before the court. The following record was made:

"*Mr. Andrews* [prosecuting attorney]: May it please the court, this is the matter of the People of the State of Michigan *v.* Ernest B. Sandefur, File No 4068. Mr. Sandefur was before the court on the 20th day of June, 1962, with his counsel, Mr. Nahan, of the city of Allegan, and stood mute on a charge of homicide which had been filed on the 5th day of June. My understanding is Mr. Sandefur has further consulted with his counsel, Mr. Nahan,

and wishes to inform the court that there is a change in the plea in this matter. Is that right, Mr. Nahan?

"*Mr. Nahan:* Yes, sir. I advised Mr. Sandefur and he has agreed to change his plea from mute to a plea of guilty to the general charge of homicide, with the request that the court allow respondent[3] to offer evidence as to the degree of homicide, and then after hearing such evidence determine the degree.

"*The Court:* Is that your wish, Mr. Sandefur?

"*The Respondent:* Yes, sir, it is okay with me, sir.

"*The Court:* Mr. Nahan has been your attorney for the last 2 months or so?

"*The Respondent:* Yes.

"*The Court:* His services have been satisfactory?

"*The Respondent:* Satisfactory to me, sir, fine.

"*The Court:* Plea of not guilty heretofore entered by the court may be withdrawn, plea of guilty to the open charge of homicide will be accepted by the court. There will be no bond. Mr. Nahan and the court has discussed the matter of trial date to determine degree of guilt in this matter and he has suggested a month from today. Is that satisfactory to you, Mr. Andrews?

"*Mr. Andrews:* Satisfactory to the people, yes, your Honor.

"*The Court:* That is the 20th day of September, 9 o'clock.

"*Mr. Andrews:* I would be perfectly willing to make available to counsel my files in the matter so we might expedite this hearing.

"*The Court:* That will be appreciated.

"*Mr. Nahan:* Thank you, your Honor."

---

[3] CL 1948, § 612.1 (Stat Ann § 27.653), and GCR 1963, 201.1, have specifically provided for upwards of 50 years that the party who commences an action shall be designated as plaintiff and the adverse party as defendant. Such designation is now made applicable to criminal actions by GCR 1963, 785.1. The "respondent", here referred to, is Mr. Sandefur. Elsewhere in this opinion the term "respondent" has referred to Mr. Hoffman, the attorney. Justice T. M. KAVANAGH refers to "defendant Hoffman."—REPORTER.

A little over a month later the court conducted an unusually thorough hearing to determine the degree of guilt. It is unnecessary that the hearing be rehashed here beyond comment that the court and all counsel left no legal stone unturned, no known witness unsworn, no argument for a reduction of degree left silent. The result, certified to us by Judge Smith, was this:

"On October 9, 1962, the court found:

" 'The court finds there is an absence of that degree of premeditation which would characterize the act as murder in the first degree and, likewise, an absence of such provocation or justification that would reduce the homicide to manslaughter.

" 'We have here a killing done in anger with sufficient time for a cooling off with no justification for self-defense, and in the opinion of the court, those circumstances dictate a finding of murder in the second degree and the court so finds.'

"The court then asked the respondent, Ernest Sandefur, if he knew of any reason why the court could not lawfully pass judgment, and the respondent replied:

" 'No, sir.

" '*The Court:* And sentence in your matter today?

" '*The Respondent:* No, sir.

" '*The Court:* Is there anything you would like to say to the court?

" '*The Respondent:* I don't know of anything, sir.

" '*The Court:* Mr. Nahan?

" '*Mr. Nahan:* No, sir.

" '*The Court:* It is the sentence and judgment of this court that Ernest B. Sandefur be committed to the jurisdiction of the Michigan corrections department and confined at Michigan Southern Prison at Jackson for a period not less than 20 nor more than 40 years. The court recommends the minimum.

" '*Mr. Nahan:* Your Honor, does such sentence take into consideration the time spent in the Allegan county jail?

" '*The Court:* Yes. The court always takes that matter in consideration.' "

It was not claimed then or in the course of post-conviction proceedings (mentioned later) that Mr. Nahan did not act faithfully and competently for the defendant. Indeed, the full record of the statutory proceeding (CL 1948, § 750.318 [Stat Ann 1954 Rev § 28.550]), conducted by the court to determine the degree of Mr. Sandefur's guilt, shows that Mr. Nahan went to uncommon lengths in effort to reduce the charge against Mr. Sandefur to voluntary manslaughter; a goal insurmountable in view of eyewitness proof that Mr. Sandefur, having shot at and wounded his son in the home, pursued the fleeing son down the street, meanwhile firing his Colt .45 three times more with fatal effect. Mr. Nahan's uphill work did at least accomplish for Mr. Sandefur a conviction of second-degree rather than first-degree murder, along with recommendation of the minimal term of sentence as fixed by the court, that is, 20 years.

In May of 1965 Mr. Sandefur wrote to "the Allegan county circuit court," alleging indigency and requesting:

"Will you please appoint me an attorney, I want to appeal my case, and furnish all records and transcript at public expense."

May 27, 1965 the court appointed the respondent Hoffman "appellate counsel for the defendant." The order of appointment concluded:

"It is further ordered that such portion of the trial transcript as shall be requested by counsel for

post-conviction motions and the perfection of an appeal be furnished to said counsel."

Having obtained the necessary transcripts and having completed what to him was requisite to performance of his appointive duty, Mr. Hoffman reported to the court under date of September 24, 1965 that he could find no reason or ground "to file for new trial" or attempt an appeal on behalf of Mr. Sandefur. His report consists of 3 printed pages. Save for deletion by asterisks of a long paragraph which includes the oath required by our July 17, 1964 amendment of section 3 of State Bar Rule 16 (373 Mich cxxviii–cxxxi),[4] the report appears verbatim in Justice T. M. KAVANAGH's opinion and will not be repeated here. We find that report, supported as it was by Mr. Hoffman's undisputed testimony given in response to Judge Smith's order to show cause, amply sufficient to meet and overcome any thought that Mr. Hoffman's refusal to proceed was either contemptuous or technically indicative of contempt. The report and the testimony exhibit assiduous care on the part of an able and experienced trial and appellate lawyer in undertaking to search a complete record—of arraignment, appointment of counsel, plea, and statutory proceeding which included the taking of the defendant's testimony along with that of others—for some reasonable or even "arguable" possibility of error. The report was right, factually and legally. It justifies our now declared ruling that Mr. Hoffman, declining to proceed further, relied properly upon the canonically ordered duties of members of the Michigan Bar.

---

[4] The oath thus required includes this paragraph:

"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land."

As against all this it is not out of order to observe that even one of these brilliantly imaginative law professors *moderne*—strengthened say like Samson with Dundreary whiskers and curls of Custer—would be hard put to strain out of Mr. Sandefur's 1962 court record something other than plain nonsense for review on his behalf. Of that we own to some knowledge born of experience, to which we come now.

The soundness of Mr. Hoffman's reported appraisal of the Sandefur record was confirmed by Judge Smith at the time.[5] It was tested thereafter by the Court of Appeals and then by this Court.

A week after having received Mr. Hoffman's report Judge Smith appointed another eminent (and this time obediently willing) member of the Allegan county bar, to act as substituted counsel in the place and stead of Mr. Hoffman. Such new counsel promptly prepared and submitted to the Court of Appeals an application on behalf of Mr. Sandefur for leave to take a delayed appeal. We need not relate the valiant if useless content thereof. It was denied unanimously by order entered March 8, 1966. The order reads:

"In this cause an application for delayed appeal is filed by defendant, and nothing in opposition thereto having been filed, and due consideration thereof having been had by the Court;

"It is ordered that the application for delayed appeal be, and the same is hereby denied for the

---

[5] Judge Smith's opinion of October 11, 1965, denying Mr. Sandefur's then pending motion for new trial, stated:

"The court has appointed Leo W. Hoffman, an attorney of the city of Allegan, to represent respondent in his petition for a new trial. Mr. Hoffman has advised the court after reviewing the record he finds no grounds for a new trial or appeal. *After being so advised by Mr. Hoffman the court reviewed the record and is like minded.*"

reason that a meritorious basis for an appeal is not established."

An application to this Court for leave to review the quoted order of denial was denied by unanimous order entered June 14, 1966. That order reads:

"On order of the Court, the application for delayed leave to appeal is considered, and the same is denied, for the reasons that defendant-appellant has failed to persuade the Court that he has a meritorious basis for appeal or that the decision of the Court of Appeals was clearly erroneous."

A second application by Mr. Sandefur, alleging applicability to his 1962 confession and conviction of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694), *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882), and *Davis* v. *North Carolina* (1966), 384 US 737 (86 S Ct 1761, 16 L Ed 2d 895), all handed down in 1966, was denied here September 6, 1967 by order reading:

"On order of the Court, the application for leave to appeal is considered, and the same is denied, for the reasons that no sufficient justification or meritorious basis is presented and further because a previous application was denied by order of this Court on June 14, 1966."

There is reversible error here, committed successively by the retroaction of backward bent judges. Judge Smith erred in planting his judgment of contempt upon view that new section 20 of article 1 of the Constitution of 1963, granting appeal as of right "in every criminal prosecution," became applicable *nunc pro tunc* to the 1962 judgment of conviction and sentence of Mr. Sandefur.[6] Division

---

[6] All presently seated Justices have agreed on this. Judge Smith's retroactive application of said section 20 appears in his opinion of January 24, 1966 this way:

3 erred in backtracking *Anders* two years to justify a judgment of conviction of contempt for having done that which, when performed, was lawful. And Division 3 erred in failing to perceive that the practice pursued by Judge Smith, when the judge substituted promptly the willing Mr. Tooman for the unwilling Mr. Hoffman, provided Mr. Sandefur with service—appellatewise—surpassing that which the Supreme Court later called down upon California on behalf of Mr. Anders. ·

On petition for *certiorari,* filed by the indigent and imprisoned Mr. Anders, the Supreme Court (not exactly quiescent or unanimous) criticized California's method of providing appellate service and laid down for California and States providing similar appellate procedure a new rule; in particular one which exacts of appointed appellate counsel a request for permission to withdraw and "a brief referring to anything in the record that might arguably support the appeal." Then the rule calls upon the court to make a determination that "the case is [or is not] wholly frivolous."

As against that rule and for the nonce we prefer our eminently superior practice; that of appointing for an indigent appellant willing or disposed counsel as done by Judge Smith. It provides for such an appellant a lawyer more likely to serve better than would the lawyer forced against his will to act for·

---

"But citation of authorities from other jurisdictions and from the canon of ethics simply does not solve the practical problem of implementing the Michigan Constitutional grant of an appeal of right. To that end the Michigan Supreme Court has required the appointment of appellate counsel in GCR 785.

"An appeal as of right requires an *appellate court* to pass final judgment. Neither the judgment of the trial court or a member of the bar is a proper substitute for appellate review. * * *

"Likewise where conflict exists between an attorney's obligations under the canons of professional ethics of the American Bar Association and his obligations under the Constitution of his State, the former must yield to the latter."

a cause he knows, and the trial judge knows, is
frivolous. And, unlike *Anders,* it certainly assures
this in the appellate court; that the indigent appel-
lant is represented there no matter the fatuity of
the presented issues and arguments presented
thereon.

### Second: Was respondent guilty of contempt for failure to move for leave to withdraw?

Division 3 repeated what became on appeal a new
charge against the respondent; that he did not ask
leave of Judge Smith to withdraw from representa-
tion of Mr. Sandefur (9 Mich App at 344, 346).
This is a question no one raised in circuit and is
simply more afterwisdom acquired of *Anders.* Not
having been charged against Mr. Hoffman, in cir-
cuit, as a contemptuous act or omission, the allega-
tion was not reviewable by Division 3 and is not
before this Court now. We take it up nonetheless
since the response in any event must be the same.

Judge Smith did not require or call upon Mr.
Hoffman for a motion for leave to withdraw. The
judge instead appointed substitute counsel and did
so some weeks prior to instituting this proceeding
by order to show cause. His first order effected a
proper substitution of counsel, obviated need for
presentation and consideration of a motion for leave
to withdraw, released the respondent Hoffman from
further duty as previously appointed counsel, and
provided as we have seen expeditious if vain appel-
late proceedings on behalf of Mr. Sandefur.

It is not open to question, this whole record con-
sidered, that Judge Smith wanted to pose and decide
for appellate review just one issue, that is, duty of
appointed counsel to appeal on grounds assigned by
the indigent defendant no matter the sophistry or
frivolity thereof. The judge's opinions, quoted

*infra,* make that clear. So do the introductory paragraphs of his opinion finding Mr. Hoffman guilty of contempt:

"The circuit court for the county of Allegan, on its own motion, required Leo W. Hoffman, a duly licensed attorney at law, to appear before the court to show cause why he should not be adjudged guilty of contempt for failure to take the necessary legal steps to bring the matter of the People *v.* Ernest B. Sandefur, No. 4068, Allegan county circuit court, before the Michigan Court of Appeals.

"Ernest B. Sandefur had been adjudged guilty of second-degree murder by this court and sentenced to a term in prison. After a lapse of several years, Sandefur petitioned the court for legal counsel to enable him to have his case reviewed. On May 27, 1965, the court appointed Mr. Hoffman to represent Sandefur pursuant to GCR 1963, 785, and article 1, § 20, Michigan Constitution 1963.

"Thereafter Mr. Hoffman reviewed the file and record in the Sandefur case and reported to the court in writing his professional opinion that Mr. Sandefur had no just grounds on which to appeal. Mr. Hoffman's report to the court contained a refusal to proceed to take the necessary steps for an appeal. Thereupon the court appointed substitute counsel to represent Sandefur."

*To Summarize:*

1. Refer back to the introductory paragraphs of this opinion. They show that local law is properly determinative of the issue made in circuit. They show also the inapposite character of each of the cases Justice T. M. KAVANAGH has cited under heading "We are not without a pragmatic guide implementing the decision in *Anders:*" (*post* 100), in that no one of them challenges or decides the asserted power of a State trial judge to find an attorney guilty of contempt for having refused after

appointment to proceed with an indigent's demand for appeal on grounds which the judge and the attorney both know are frivolous.

2. As for the trial judge's reference to former and now extinct[7] Rule 785.4(2) (373 Mich xvi, xvii, xviii), it need only be said that that rule merely required the appointment of counsel for indigent convicts "to prepare delayed motions for postconviction proceedings in the trial court and to prepare an application for leave to take delayed appeal." It did not undertake, nor has this Court ever undertaken, to require appointed counsel to proceed on frivolous grounds once those grounds have been ascertained to be such, as in this case.

The judgments of the circuit court and Court of Appeals are reversed. An order acquitting the respondent of contempt, as charged in the circuit court, will enter there.

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ., concurred with BLACK, J.


T. M. KAVANAGH, J. (*dissenting*). Defendant attorney appeals from the decision of the Court of Appeals (9 Mich App 342), which affirmed the order of the trial court holding defendant in contempt for failing and refusing to prepare and file an appeal in the matter of People *v.* Sandefur.[1]

Ernest Sandefur entered a plea of guilty to an open charge of homicide. The trial court, after holding a hearing to determine the degree of guilt,

---

[7] Repealed effective June 8, 1967 (379 Mich xxvi, xxx).

[1] The trial court denied a subsequent motion *in propria persona* for a new trial, but did appoint another attorney for postconviction proceedings. The Court of Appeals by order dated March 8, 1966, denied the application for delayed appeal "for the reason that a meritorious basis for appeal is not established." The Supreme Court by order dated September 6, 1967, denied Sandefur's application *in propria persona* for leave to appeal. See 379 Mich 776.

found Sandefur guilty of second-degree murder and sentenced him on October 9, 1962, to a term of 20 to 40 years. On May 24, 1965, Sandefur filed a written request, and the required affidavit of indigency for appointment of counsel to appeal his conviction.

The circuit court of Allegan county appointed defendant, on May 27, 1965, to act as appellate counsel for Sandefur.

On September 24, 1965, defendant filed a report in the Allegan circuit court stating:

"Some time ago you appointed me to represent Ernest Sandefur, who is now serving a sentence in Jackson Prison for the murder of a son, Gaylon Sandefur.

"I have obtained his file from Mr. Nahan, who represented Mr. Sandefur during the proceedings had in the circuit court for the county of Allegan, and I have reviewed the transcript and the record on proceedings in the court file.

"It is my conclusion that Ernest Sandefur, after being properly advised of all his constitutional rights, voluntarily, without duress of any kind, entered a plea of guilty. That he made a voluntary confession to the officers attached to the sheriff's office, that he voluntarily took the stand and testified, and that the degree of crime was properly determined by the circuit court and that his sentence was proper. I can find no reason or ground to file a motion for new trial or to take an appeal in this case.

"There is no question but that Ernest Sandefur, while sane, not in self defense, without that provocation sufficient to reduce the crime to manslaughter, deliberately and intentionally, in accordance with a determination to kill his son, shot his son several times and caused his death.

"Even if there were some legal technicality, which might conceivably result in this man securing a new

trial, I would not feel obligated or bound to pursue it under the circumstances.

"I am fully aware of the constitutional protection that is afforded persons accused of crime, as set forth in section 20, article 1 of our Constitution of 1963, which, among other rights, affords to him; 'an appeal as a matter of right[;] and in courts of record[,] when the trial court so orders, to have such reasonable assistance as may be necessary to execute [perfect, *sic*] and prosecute an appeal'. I do not interpret this provision of the Constitution as meaning that every attorney appointed by the court shall be required to file an appeal *where there is no error in the proceedings, either as to fact or law,* and an appeal could not possibly benefit the accused.

"Being mindful of my oath taken when I was admitted to the bar  *  *  *  and having in mind the canons of professional ethics as spelled out by the American Bar Association and by our State Bar Association, I have concluded that it would be improper and unethical for me to advance a defense that, in my opinion, would be useless and not of any benefit to my client and contrary to my professional opinion and personal convictions.

"*I am therefore, stating as a matter of record, that I cannot and will not file a motion for a new trial or an appeal for Ernest Sandefur.*" (Emphasis added.)

On December 3, 1965, the circuit judge, on his own motion, ordered defendant to appear in the circuit court to show cause why he should not be adjudged in contempt of court and punished for refusing to file a motion for a new trial and to take an appeal for and on behalf of Ernest Sandefur.

After a full hearing in the matter the circuit court, in its opinion, stated that the citation of authorities from other jurisdictions and from the canon of ethics "simply does not solve the practical problem

of implementing the Michigan constitutional grant of an *appeal of right.*" (Emphasis added.) The circuit court concluded in its order that such refusal to prepare and file an appeal "as guaranteed by the Constitution of the State of Michigan 1963, particularly article 1, § 20, and GCR 1963, 785, constitutes a violation of a valid order of this court, and that a refusal to proceed as directed constitutes contempt of this court." A civil fine of $25 with a 20-day stay of performance was imposed by the circuit court.

Defendant filed his appeal as a matter of right to the Court of Appeals. The opinion of the Court of Appeals quoted at length from *Anders* v. *California* (1967), 386 US 738 (87 S Ct 1396, 18 L Ed 2d 493),[2] and tacitly adopted the "single inflexible answer" contained in *Anders* to the difficult problem of how to afford equal protection to indigent appellants. While recognizing that the *Anders* rule postdated defendant's cause of action, the Court of Appeals concluded that the language and logic of *Anders* was binding upon the defendant, and affirmed the circuit court.

Leave to appeal to this Court was granted by order dated April 16, 1968. 380 Mich 766.

On appeal defendant contends that (1) Const 1963, art 1, § 20, does not apply to criminal prosecutions concluded prior to the effective date of the Constitution; (2) the order of the circuit court appointing defendant as counsel for Sandefur did not, by its terms, order the defendant to file a delayed motion for new trial and, upon denial thereof, a delayed appeal; (3) the circuit court for the county of Allegan did not have the authority and power to compel a court-appointed attorney to violate his oath of office, the canon of ethics or case

---

[2] Hereinafter referred to as *Anders.*

law defining his duties to his client, the court and the public, and if so construed the order would constitute an unlawful order;   (4) the defendant did act in good faith and, in fact, was not contemptuous; (5) it was impossible to file an application for delayed new trial and a delayed appeal, within the framework of the law.[3]

Defendant's contentions wholly miss the point and the decisions of both courts below reach the proper conclusion but for the wrong reasons.

The primary issue is twofold:   (1) Did the circuit court issue a lawful and valid order?   (2) Did defendant's noncompliance with a valid order of the circuit court constitute contempt?

The secondary issue focuses upon the extent of the duty of a court-appointed appellate counsel to prosecute an application for leave to appeal from a criminal conviction after that attorney has conscientiously determined that there is no merit to the indigent's appeal.   Ancillary to this secondary issue is the question of whether appellate counsel, appointed to prosecute an application for leave to appeal, is held to the same standards as appellate counsel appointed to perfect an appeal as of right as required in *Anders*.

---

[3] Defendant's brief in the Court of Appeals concisely phrased these contentions in the single issue of whether a court-appointed attorney, appointed under GCR 1963, 785.4(2) is guilty of contempt for refusal to file an application for delayed appeal where, in that attorney's professional opinion, there was no merit in such proceedings.   The trial court, considering the matter as a disciplinary proceeding, viewed the legal question in the context of the *right of an attorney "to resist court appointment* to assist indigent respondents charged with crime."   The Court of Appeals considered the legal question presented in the aspect of whether an attorney's constitutional duty to provide "such reasonable assistance as may be necessary to perfect and prosecute an appeal" for an indigent defendant compels him to *compromise his oath of office and canons of professional ethics* in filing an automatic appeal regardless of whether or not there is merit in the appeal.   9 Mich App 342, 344. (Emphasis added.)

Prior to the consideration of these issues, we must distinguish the basis of Ernest Sandefur's claim of appeal and defendant Hoffman's claims and objections to this appeal.

Ernest Sandefur's claim of appeal was in the nature of an application *for leave to appeal.* Sandefur was convicted on October 9, 1962. At that time there was no appeal as a matter of right in criminal cases in Michigan, the date of conviction being prior to the effective date of the Michigan Constitution of 1963. The request for appointment of appellate counsel and the appointment of defendant Hoffman occurred in May of 1965. The circuit court, finding defendant Hoffman in contempt, apparently thought that Sandefur's claim of appeal was "of right." In its opinion the circuit court stated:

> "An appeal as of right requires an *appellate court* to pass final judgment. Neither the judgment of the trial court or a member of the bar is a proper substitute for appellate review.   *   *   *
>
> "Since the 1963 Michigan Constitution changed the law from 'leave to appeal' to 'an appeal as of right' there seems no other recourse but to amend the Constitution."

In this respect the circuit court was in error. Absent some provision in the 1963 Constitution making the appeal as of right provision retrospective, Sandefur's appeal was discretionary in nature. This nonretrospective aspect of article 1, § 20, on "appeal as of right" comports with the intent of the drafters of the Michigan Constitution of 1963. 1 Constitutional Convention 1961, Official Record, pp 562–568.[4]

---

[4] Of particular interest are the statements of Delegate Norris dealing with the appointment of counsel (p 563):

"All I can say to that, Mr. King, is that there are certain Supreme Court decisions, United States Supreme Court decisions,

For the circuit court to make a proper appointment of appellate counsel, it had to proceed under the provisions of Const 1963, art 1, § 20, which reads in part:

"and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

It is to be noted that this language is in substance identical with the Michigan Constitution of 1908, art 2, § 19.

Further, the trial court was required under the then existing Michigan General Court Rules to appoint appellate counsel. GCR 1963, 785.4(2)[5] read in part as follows:

"Delayed Appeal.   *   *   *   Upon defendant's request, if defendant is indigent, the trial court in which defendant was convicted *shall* appoint counsel for him and *shall* furnish such portions of the trial transcript counsel so appointed requires to prepare delayed motions for postconviction proceedings in the trial court and to prepare an application for leave to take delayed appeal."   (Emphasis added.)

---

particularly *Griffin* v. *Illinois,* with regard to the extent of the participation of the State in giving effect to the right in the Federal Constitution to assistance of counsel, and insofar as that particular right would be applicable, then it would have some effect on what you are now questioning. I don't think, however, there has been any State court decision which has gone farther than what the Federal court has provided. So, no matter what we say here, it wouldn't go beyond what the United States Supreme Court now requires."

The above statement is buttressed by the proposition as stated by the Court in *Griffin* v. *Illinois* (1956), 351 US 12, 18 (76 S Ct 585, 100 L Ed 891), that:

. "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, *e.g., McKane* v. *Durston,* 153 US 684, 687, 688 (14 S Ct 913, 38 L Ed 867)."

See, also, the dissent of Mr. Justice Harlan in *Douglas* v. *California* (1963), 372 US 353, 365 (83 S Ct 814, 9 L Ed 2d 811).

[5] Effective August 1, 1964 (see 373 Mich xvii); amended effective May 2, 1967 (see 379 Mich xxviii); repealed effective June 8, 1967 (see 379 Mich xxx).

This subrule is to be distinguished from GCR 1963, 785.4(1), which required the appointment of counsel to perfect an appeal where the defendant "is entitled as a matter of constitutional right to appellate review of his conviction."[6]  In *People* v. *Mallory* (1967), 378 Mich 538, 568, Justice SOURIS drew this distinction between the subrules as follows:

"While 785.4(1) applies prospectively, in the sense that it specifies procedures to be followed at sentencing in current criminal cases where timely appeal as of right exists, *785.4(2) applies retrospectively, in the sense that it specifies the procedures for furnishing appellate counsel and free trial transcript to indigents in all other criminal cases completed through sentencing before August 1, 1964, the effective date of 785.4(1)*."  (Emphasis added.)

We conclude that it was incumbent upon the trial judge to appoint appellate counsel to prosecute leave to appeal under the then existing subrule of this Court.[7]  The trial judge proceeded properly, even though under a misapprehension as to his duty and authority.

The Court of Appeals, after quoting at length from *Anders,* found that *defendant did not ask the court to withdraw* from representing Sandefur, but told the court he would not file a motion for new trial or an appeal for Sandefur.  Tacitly relying upon *Anders,* it held that this direct refusal to comply with a court order constituted contempt.

---

[6] Effective August 1, 1964; amended effective May 2, 1967; repealed effective June 8, 1967.  Although this Court Rule was rescinded by order of this Court dated June 8, 1967, we are required —in the light of *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811), and more recently in *Anders* v. *California* (1967), 386 US 738 (87 S Ct 1396, 18 L Ed 2d 493)—to make this rule prospectively applicable in appeals which proceed as of right pursuant to Const 1963, art 1, § 20.

[7] See *People* v. *Mallory* (1967), 378 Mich 538, 569.

In *Anders,* the United States Supreme Court restricted its consideration to the effectiveness of counsel on a first appeal. Mr. Justice Clark, speaking for the Court, framed the specific issue (p 739):

"We are here concerned with the extent of the duty of a court-appointed appellate counsel to prosecute a *first appeal* from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." (Emphasis added.)

Further, the facts involved in *Anders* indicate that the United States Supreme Court considered this issue solely in the light of California's constitutional grant of "a right of appeal."

A careful analysis of the majority opinion in *Anders* reveals that it was predicated upon the decisions in *Griffin* v. *Illinois* (1956), 351 US 12 (76 S Ct 585, 100 L Ed 891), and *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811). In both *Griffin* and *Douglas* the United States Supreme Court was concerned solely with an appeal as of right. In fact, the *Douglas* opinion specifically delineated its decision. Mr. Justice Douglas, speaking for the Court, stated (pp 356, 357):

"We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal,* granted as a matter of right to rich and poor alike (Cal Penal Code, §§ 1235, 1237), from a criminal conviction. We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California supreme court after the district court of appeal had sustained

his conviction (see Cal Const, art 6, § 4c; Cal Rules on Appeal, Rules 28, 29), or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' *Williamson* v. *Lee Optical of Oklahoma* (1955), 348 US 483, 489 (75 S Ct 461, 99 L Ed 563); *Griffin* v. *Illinois, supra,* p 18. Absolute equality is not required; lines can be and are drawn and we often sustain them. See *Tigner* v. *Texas* (1940), 310 US 141 (60 S Ct 879, 84 L Ed 1124); *Goesaert* v. *Cleary* (1948), 335 US 464 (69 S Ct 198, 93 L Ed 163). But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor."

Defendant Hoffman's contention in this appeal is that the circuit court and the Court of Appeals—in ruling defendant guilty of contempt of court—treated the facts and law as though defendant had refused to take "a timely appeal as a matter of right." While defendant is correct in his observation, see this opinion *supra,* he is still guilty of contempt for refusing to comply with a lawful order. The basis of this conclusion involves the secondary issue framed above and results from the following analysis.

The circuit judge, under either Const 1908, art 2, § 19, or Const 1963, art 1, § 20, was empowered to appoint appellate counsel to provide "such reasonable assistance as may be necessary to perfect and prosecute an appeal." Further, it was incumbent upon the circuit judge under GCR 1963, 785.4(2),

discussed above, to appoint counsel for an indigent defendant. While the order appointing defendant Hoffman did not cite either of the above authorities, the order of the circuit judge was, in final analysis, a valid and lawful order. Given the validity and the lawfulness of the order appointing him as appellate counsel, defendant Hoffman had three alternative courses of action:·

*First.* Defendant Hoffman could have attacked the order as being invalid on its face. This would have directly put in issue the propriety of the order and the circuit judge's authority upon which it was based. ·

*Second.* Defendant Hoffman could have categorically refused to accept the appointment immediately upon its issuance. This, of course, would have raised the issue of contempt between the trial judge and defendant Hoffman without involving the merit of Sandefur's appeal.

*Third.* Defendant Hoffman could have accepted the appointment and either proceeded to perfect an appeal for Sandefur or declined to proceed with the appeal. It is this course of action which defendant Hoffman did in fact choose.

Thus we are presented with the problem of determining whether, once having accepted the appointment as appellate counsel, defendant's actions met the constitutional requirement of "effectiveness of counsel." Put in more general terms, we must determine whether appellate counsel appointed to prosecute an application for leave to appeal is held to the same standard as the appellate counsel appointed to prosecute an appeal as of right, as in *Anders.*

A review of the United States Supreme Court decisions, especially those cited as authority in *Anders,* compels us to the inexorable conclusion that

appointed appellate counsel must be held to the same standard of "effectiveness," irrespective of the nature of the appeal.

In 1958, the Supreme Court in *Ellis* v. *United States,* 356 US 674 (78 S Ct 974, 2 L Ed 2d 1060), laid down guidelines. Concerned with operation of the Federal rules of criminal procedure as it affected an indigent's application for *leave to appeal* and an *appointed attorney's* role in such an appeal, the Court reasoned as follows (p 675):

"Normally, allowance of an appeal should not be denied until an indigent has had adequate representation by counsel. *Johnson* v. *United States* (1957), 352 US 565 (77 S Ct 550, 1 L Ed 2d 593). In this case, it appears that the two attorneys appointed by the court of appeals, performed essentially the role of *amici curiae. But representation in the role of an advocate is required. If counsel* is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may *ask* to withdraw on that account. *If the court is satisfied* that counsel has diligently investigated the possible grounds of appeal, *and agrees* with counsel's evaluation of the case, *then* leave to withdraw may be allowed and leave to appeal may be denied." (Emphasis added.)

The plain words and meaning of this opinion clearly indicate that the Supreme Court intended to restrict counsel's request to withdraw and in addition thereto require concurrence by the appointing court in counsel's approach and "evaluation" of the case.

However, we must recognize that where the constitutional rights of equal protection and due process are involved the Supreme Court has gone as far as striking down a trial judge's independent determination of the merits of an appeal. In *Eskridge* v. *Washington Prison Board* (1958), 357 US 214 (78 S Ct 1061, 2 L Ed 2d 1269), the Court, dealing with

the denial of a transcript by a State judge, stated (p 216):

"The conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript."

In view of the decision in *Eskridge,* it was logically consistent for the Supreme Court to likewise protect these rights from the unreviewable and independent determination of a nonjudicial officer. In *Lane* v. *Brown* (1963), 372 US 477 (83 S Ct 768, 9 L Ed 2d 892), the Court, reviewing the denial of a writ of error *coram nobis* and the Indiana public defender's determination of "no merit," reached this conclusion (p 485):

"In *Eskridge* the Court held constitutionally invalid a provision which permitted a trial judge to prevent an indigent from taking an effective appeal. The provision before us confers upon a State officer outside the judicial system power to take from an indigent all hope of any appeal at all. Such a procedure, based on indigency alone, does not meet constitutional standards."

Appellants have attempted to distinguish these and other cases on the basis of "appeal of right" vis à vis "leave to appeal." See, *e.g., Burns* v. *Ohio* (1959), 360 US 252 (79 S Ct 1164, 3 L Ed 2d 1209). No logical distinction can be made on this basis in the area presently under consideration. Clearly, the Court in *Lane* v. *Brown, supra,* refuted any such distinction (pp 483–485):

"In *Griffin* v. *Illinois,* 351 US 12, the Court held that a State with an appellate system which made available trial transcripts to those who could afford them was constitutionally required to provide 'means

of affording adequate and effective appellate review to indigent defendants.' *Id.*, at 20. 'Destitute defendants,' the Court held, 'must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.' *Id.*, at 19. In *Burns* v. *Ohio*, 360 US 252, involving a $20 fee for filing a motion for leave to appeal a felony conviction to the supreme court of Ohio, this Court reaffirmed the *Griffin* doctrine, saying that 'once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to· any phase of that procedure because of their poverty. * * * This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency.' *Id.*, at 257. In *Smith* v. *Bennett* (1961), 365 US 708 (81 S Ct 895, 6 L Ed 2d 39), the Court made clear that these principles were not to be limited to direct appeals from criminal convictions, but extended alike to State postconviction proceedings. 'Respecting the State's grant of a right to test their detention,' the Court said, 'the Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale, and its hand extends as far to each.' *Id.*, at 714. In *Eskridge* v. *Washington Prison Board*, 357 US 214, the Court held invalid a provision of Washington's criminal appellate system which conferred upon the trial judge the power to withhold a trial transcript from an indigent upon the finding that 'justice would not be promoted * * * in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein.' *Id.*, at 215. There it was said that 'the conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript.' *Id.*, at 216.

"The present case falls clearly within the area staked out by the Court's decisions in *Griffin, Burns, Smith,* and *Eskridge.* To be sure, this case does not involve, as did *Griffin,* a direct appeal from a criminal conviction, but *Smith* makes clear that the *Griffin* principle also applies to State collateral proceedings, and *Burns* leaves no doubt that the principle applies even though the State has already provided one review on the merits.

"In *Eskridge* the Court held constitutionally invalid a provision which permitted a trial judge to prevent an indigent from taking an effective appeal. The provision before us confers upon a State officer outside the judicial system power to take from an indigent all hope of any appeal at all. Such a procedure, based on indigency alone, does not meet constitutional standards."

The underlying theory of these cases, and one which should prove valuable as a guide to future decisions in this area, was well stated in the dissenting opinion of Justice Harlan in *Douglas* v. *California, supra,* at page 366:

"The Court distinguishes our review from the present case on the grounds that the California rule relates to 'the *first appeal,* granted as a matter of right.' *Ante,* p 356. But I fail to see the significance of this difference. Surely, it cannot be contended that the requirements of fair procedure are exhausted once an indigent has been given one appellate review. *Cf. Lane* v. *Brown, post,* p 477. Nor can it well be suggested that having appointed counsel is more necessary to the fair administration of justice in an initial appeal taken as a matter of right, which the reviewing court on the full record has already determined to be frivolous, than in a petition asking a higher appellate court to exercise its discretion to consider what may be a substantial constitutional claim."

We agree with Mr. Justice Harlan that, as a matter
of judicial policy, there is no significance in the dis-
tinction between appeal as of right and leave to
appeal *as far as effectiveness of counsel is con-
cerned.*[8]

Having reached the above conclusions and being
cognizant of pervasive judicial policy, we must
recognize that the guidelines set out in *Anders, su-
pra,* are controlling. The majority opinion estab-
lishes a uniform answer to the difficult problem of
how to accord equal protection of the laws to indi-
gent appellants. The Supreme Court, in *Anders,*
stated (pp 744, 745):

"The constitutional requirement of substantial
equality and fair process can only be attained
where counsel acts in the role of an active advocate
in behalf of his client, as opposed to that of *amicus
curiae.* The no-merit letter and the procedure it
triggers do not reach that dignity. Counsel should,
and can with honor and without conflict, be of more
assistance to his client and to the court. His role
as advocate requires that he support his client's
appeal to the best of his ability. Of course, if coun-
sel finds his case to be wholly frivolous after a con-
scientious examination of it, he should so advise the
court and request permission to withdraw. That
request must, however, be accompanied by a brief
referring to anything in the record that might argu-
ably support the appeal. A copy of counsel's brief
should be furnished the indigent and time allowed

---

8 While it may be persuasively argued that the constitutional
principles of equality and due process which the Supreme Court
relied on in *Douglas, Lane, Draper* [*Draper* v. *Washington* (1963),
372 US 487 (83 S Ct 774, 9 L Ed 2d 899)], *Burns, and Ellis,* are
universally applicable irrespective of the nature of the appeal, we
need not now decide the thorny problem of whether this State must,
as a matter of Federal constitutional requirement, appoint appellate
counsel to assist an indigent in pursuing discretionary review of his
criminal conviction absent a controlling court rule. See *People* v.
*Mallory, supra,* pp 566, 567. See, also, *State* v. *Herzig* (Fla, 1968),
208 So 2d 619.

him to raise any points that he chooses; the court—
not counsel—then proceeds, after a full examination
of all the proceedings, to decide whether the case is
wholly frivolous. If it so finds it may grant coun-
sel's request to withdraw and dismiss the appeal
insofar as Federal requirements are concerned, or
proceed to a decision on the merits, if State law so
requires. On the other hand, if it finds any of the
legal points arguable on their merits (and therefore
not frivolous) it must, prior to decision, afford the
indigent the assistance of counsel to argue the ap-
peal.

"This requirement would not force appointed
counsel to brief his case against his client but would
merely afford the latter that advocacy which a non-
indigent defendant is able to obtain. It would also
induce the court to pursue all the more vigorously
its own review because of the ready references not
only to the record, but also to the legal authorities as
furnished it by counsel. The no-merit letter, on the
other hand, affords neither the client nor the court
any aid. The former must shift entirely for himself
while the court has only the cold record which it
must review without the help of an advocate. More-
over, such handling would tend to protect counsel
from the constantly increasing charge that he was
ineffective and had not handled the case with that
diligence to which an indigent defendant is entitled.
This procedure will assure penniless defendants the
same rights and opportunities on appeal—as nearly
as is practicable—as are enjoyed by those persons
who are in a similar situation but who are able to
afford the retention of private counsel."

We are not without a pragmatic guide implement-
ing the decision in *Anders:* our sister States, sim-
ilarly faced with this decision of the United States
Supreme Court, have responded positively. See
*State* v. *Franklin* (1967), 78 NM 127 (428 P2d 982);
*People* v. *Turner* (1967), 252 Cal App 2d 536 (60
Cal Rptr 567); *People* v. *Chung* (1967), 252 Cal App

2d 436 (61 Cal Rptr 308); *People* v. *Jones* (1967),
38 Ill 2d 384 (231 NE2d 390); *Commonwealth* v.
*Baker* (1968), 429 Pa 209 (239 A2d 201); *People* v.
*Carter* (1968), 92 Ill App 2d 120 (235 NE2d 382).
See, also, *Smith* v. *United States* (CA 8, 1967), 384
F2d 649.

We could adopt the method employed by the Flor-
ida first district court of appeal in *Smith* v. *State*
(Fla, 1968), 208 So 2d 462—divesting the trial courts
of the jurisdiction to enter an order permitting with-
drawal of appointed appellate counsel—but this ap-
pears to be a circuitous and problematic approach to
a proper implementation of *Anders.* The simplest
solution to the problem of establishing a guide of
conduct for the bar and bench is to follow the lan-
guage of *Anders.* This approach was well presented
by Chief Justice Traynor in *People* v. *Feggans*
(1967), 67 Cal 2d 444 (62 Cal Rptr 419, 432 P2d 21),
where it was held (pp 447, 448):

"Under *Anders,* regardless of how frivolous an
appeal may appear and regardless of how convinced
appointed counsel as an advocate may be that there
is nothing to advocate, a no-merit letter will not
suffice. Counsel must prepare a brief to assist the
court in understanding the facts and the legal issues
in the case. The brief must set forth a statement of
the facts with citations to the transcript, discuss
the legal issues with citations of appropriate author-
ity, and argue all issues that are arguable. More-
over, counsel serves both the court and his client by
advocating changes in the law if argument can be
made supporting change. If counsel concludes that
there are no arguable issues and the appeal is
frivolous, he may limit his brief to a statement of
the facts and applicable law and may ask to with-
draw from the case, but he must not argue the case
against his client. Counsel is not allowed to with-
draw from the case until the court is satisfied that

he has discharged his duty to the court and his client to set forth adequately the facts and issues involved. If counsel is allowed to withdraw, defendant must be given an opportunity to present a brief, and thereafter the court must decide for itself whether the appeal is frivolous. (*Anders* v. *California* [1967], 386 US 738, 741, 742 [87 S Ct 1396, 18 L Ed 2d 493]; *Ellis* v. *United States* [1958], 356 US 674, 675 [78 S Ct 974, 2 L Ed 2d 1060, 1061].) If any contention raised is reasonably arguable, no matter how the court feels it will probably be resolved, the court must appoint another counsel to argue the appeal."

See, also, appendix to the decision in *Suggs* v. *United States* (CA DC 1968), 129 US App DC 133 (391 F2d 971).

Returning to the instant case, defendant Hoffman admitted on oral argument that the order of appointment was valid and lawful, that he never filed a brief giving the facts and applicable law, and that he never requested to be relieved from the order of appointment—all of which are required by the majority opinion in *Anders*.

Further, we note that defendant Hoffman did not meet even the minimum standards established by *Anders*. The minority opinion in *Anders* states (pp 745, 746):

"The system used by California for handling indigent appeals was described by the California Supreme Court in *In re Nash*, 61 Cal 2d 491, 495 (393 P2d 405, 408):

" 'We believe that the requirement of the *Douglas Case* [372 US 353] is met * * * when, as in this case, counsel is appointed to represent the defendant on appeal, *thoroughly studies the record, consults with the defendant and trial counsel,* and conscientiously concludes that there are no meritorious grounds of appeal. If thereafter the appellate court is satisfied from its own review of the record in

the light of any points raised by the defendant personally that counsel's assessment of the record is correct, it need not appoint another counsel to represent the defendant on appeal and may properly decide the appeal without oral argument.'" (Emphasis added.)

One of the elements recited in the minority opinion is that appointed counsel "consults with the defendant and trial counsel." Defendant Hoffman admitted on oral argument that he never requested to be relieved from the order of appointment and that he never consulted with Sandefur. Also, he never asserted the fact that he consulted with trial counsel. In these respects we conclude that he could not have acted as an effective appellate counsel, even under the dissenting opinion in *Anders*.

To summarize, we hold that the order of the circuit court appointing defendant Hoffman was valid and lawful, pursuant to either Const 1908, art 2, § 19, or Const 1963, art 1, § 20, and GCR 1963, 785.4(2). Defendant Hoffman's refusal to obey this lawful order and his constitutionally impermissive attempts to avoid its effect properly subjects him to the disciplinary proceeding of contempt.

If defendant Hoffman had so desired, the courts below and this Court would have permitted him to purge himself of his contempt. But he has tenaciously persisted in attempting to vindicate his personal views. While we commend his tenacity, we cannot condone his course of action. We suggest defendant reflect upon the wise and venerable words of Chief Justice COOLEY in 1 Constitutional Limitations (8th ed, 1927), p 700:

"With us it is a universal principle of constitutional law, that the prisoner shall be allowed a defense by counsel. And generally it will be found that the humanity of the law has provided that, if

the prisoner is unable to employ counsel, the court may designate some one to defend him who shall be paid by the government; but when no such provision is made, it is a duty which counsel so designated owes to his profession, to the court engaged in the trial, and to the cause of humanity and justice, not to withhold his assistance nor spare his best exertions, in the defense of one who has the double misfortune to be stricken by poverty and accused of crime. *No one is at liberty to decline such an appointment, and few, it is to be hoped, would be disposed to do so."* (Emphasis added.)

We should affirm the decisions of the circuit court and the Court of Appeals finding defendant Hoffman in contempt.

ADAMS, J., concurred with T. M. KAVANAGH, J.

T. G. KAVANAGH, J., took no part in the decision of this case.