## MYERS v. GENESEE COUNTY AUDITOR.

DECISION OF THE COURT.

1. COUNTIES—HOSPITALS—TONSILLECTOMY—GOVERNMENTAL IMMUNITY FOR TORTS.

Order granting summary judgment for defendant county in proceeding against it by administratrix of estate of deceased child who died in county general hospital following a tonsillectomy is reversed, the rule of governmental immunity from tort liability hereby being abrogated as to all political subdivisions, per T. M. KAVANAGH, C. J., and O'HARA, J.; but as to incorporated villages, fourth class cities, special charter cities, home-rule cities, and charter townships having been abrogated heretofore by prior decisions, per SOURIS and ADAMS, JJ.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and O'HARA, J.

2. COUNTIES—PRESENTATION OF CLAIM.

*A claim against a county duly filed with the board of supervisors becomes the equivalent to a declaration (CL 1948, § 46.74).*

---

* Continued from Volume 374 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
[1, 10, 14]  26 Am Jur, Hospitals and Asylums § 13.
Immunity from liability for damages in tort of State or governmental unit or agency in operating hospital.  25 ALR2d 203.
[2]  14 Am Jur, Counties § 67.
[3, 4, 6]  49 Am Jur, States, Territories, and Dependencies § 91 *et seq.*
[6, 10, 13, 14]  38 Am Jur, Municipal Corporations § 572.
49 Am Jur, States, Territories, and Dependencies §§ 73, 91 *et seq.*
[6, 10]  State's immunity from tort liability as dependent on governmental or proprietary nature of function.  40 ALR2d 927.
[7]  14 Am Jur, Counties §§ 6–8.
37 Am Jur, Municipal Corporations § 7.
[8]  14 Am Jur, Counties § 4.
[9]  14 Am Jur, Counties § 48 *et seq.*
[12, 16]  5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

3. STATES—SOVEREIGN IMMUNITY—GOVERNMENTAL IMMUNITY.

Sovereign *immunity and* governmental *immunity are not synonymous, notwithstanding interchangeable use in the decisions, the former being a specific term limited in its application to the State and to the departments, commissions, boards, institutions, and instrumentalities of the State, as it is the only sovereignty in our system of government, except as part of its implicit sovereignty has been delegated to the Federal government (US Const, Am 10).*

4. SAME—SOVEREIGN IMMUNITY—COMMON LAW.

*The common-law rule that a sovereign was immune from suit by a subject is made the law of our State by the Constitution, subject to subsequent change, amendment, or repeal (Const 1963, art 3, § 7).*

5. CONSTITUTIONAL LAW—CONTINUANCE OF COMMON LAW AND STATUTES.

Amended *and* repealed, *as the terms are used in new Constitution continuing the common law and statutes in force that are not repugnant to the Constitution relate to the legislative process, whereas the term* changed, *therein used, contemplates judicial change (Const 1963, art 3, § 7).*

6. STATES — IMMUNITY FROM TORT LIABILITY — MUNICIPAL CORPORATIONS.

*The State and its immediate integral parts, enjoy absolute immunity from tort liability by reason of the negligent acts or omissions of its servants or agents, except as that liability has been statutorily modified, subdivisions of government, except municipal corporations, are immune when functioning governmentally but not proprietarily, and municipal corporations are no longer immune from liability for torts (PA 1945, No 87, as amended by PA 1960, No 33).*

7. MUNICIPAL CORPORATIONS—COUNTIES—STATUTES.

*Cities, counties, townships, and villages are all creatures of the legislature, being without inherent power but restricted to those activities, governmental or proprietary, which are legislatively vested in them.*

8. COUNTIES—BODY CORPORATE.

*A county is a body corporate (Const 1908, art 8, § 1; Const 1963, art 7, § 1).*

9. SAME—IMMUNITY FROM TORT LIABILITY.

*There is no legal distinction between a constitutional body corporate and a municipal corporation, hence, a county, as a constitutional body corporate, enjoys no greater immunity from*

*tort liability than does a city as a municipal corporation (Const 1908, art 8, § 1; Const 1963, art 7, § 1).*

10. Torts—Governmental Immunity—Abrogation of Rule of Immunity.

*The rule of governmental immunity from tort liability as to all political subdivisions of government is abrogated whether the involved political subdivision is functioning governmentally or proprietarily.*

11. Counties—Hospitals—Tonsillectomy—Torts.

*Order granting summary judgment for defendant county in proceeding against it by administratrix of estate of deceased child who died in county general hospital following a tonsillectomy,* held, *improper, the rule of governmental immunity from tort liability being abrogated as to all political subdivisions.*

12. Costs—Abrogation of Governmental Immunity.

*No costs are allowed on appeal from order granting summary judgment in action against county for death of 7-year-old child, a pay patient in county general hospital, where vacation of such result follows abrogation of rule against permitting recovery in action for tort liability of political subdivisions.*

Separate Opinion.

Souris and Adams, JJ.

13. Municipal Corporations—Governmental Immunity—Torts.

*The doctrine of governmental immunity from torts has already been abrogated as to incorporated villages, fourth-class cities, special charter cities, home-rule cities, and charter townships, by the Supreme Court by previous decisions.*

Dissenting Opinion.

Dethmers and Kelly, JJ.

14. Constitutional Law—Governmental Immunity—Separation of Powers.

*The power to extend, modify, or abrogate the doctrine of governmental immunity is wholly legislative in character and is not vested in the judiciary.*

15. Counties—Hospitals—Tonsillectomy—Governmental Immunity from Liability for Torts.

*The common-law doctrine of governmental immunity from liability for torts of agents and employees of a municipal corporation, not having been abrogated or modified by the legislature as to counties in respect to the operation of their hospitals, may*

*properly be made the ground for granting county's motion to dismiss action against it by administrator of estate of 7-year-old child who had been accepted as a private pay patient at its general hospital and died there following a tonsillectomy.*

16. COSTS—COUNTIES—HOSPITALS—GOVERNMENTAL IMMUNITY.
   *No costs are allowed on appeal from order granting summary judgment because of application of doctrine of governmental immunity, in action against county for death of 7-year-old child, a pay patient in a county general hospital, where such result is affirmed.*

Appeal from Genesee; Parker (Donn D.), J. Submitted June 2, 1964. (Calendar No. 7, Docket No. 50,547.) Decided March 1, 1965.

Claim by Delores Myers, administratrix of the estate of Sharon Myers, deceased, against Genesee County Auditor, the Board of Trustees of the Genesee County Tuberculosis Sanitarium, a body corporate doing business as Genesee County Memorial Hospital, and Genesee County Board of Supervisors, for damages by reason of death of child patient. Order granting summary judgment for defendants. Plaintiff appeals. Order vacated and cause remanded.

*D. Bruce Wistrand, Donald T. Butler,* and *Philip Elliott,* for plaintiff.

*Moll, Desenberg, Purdy, Glover & Bayer* and *John G. David,* for defendants.

O'HARA, J. Genesee county operates a hospital. It was formerly known as the County Sanatorium and its use was restricted to patients suffering from tuberculosis. Later, pursuant to statute,[1] its status was changed to a general hospital. It provided treatment for Genesee county welfare patients and also accepted private pay patients.

---

[1] PA 1925, No 177, § 9a, as added by PA 1949, No 141, and amended by PA 1957, No 35 (CLS 1961, § 332.159a, Stat Ann 1963 Cum Supp § 14.1099[1]).

Plaintiff's decedent, a 7-year-old child, was one of those latter. She was admitted as such on February 27, 1961, and died therein the following day after a tonsillectomy. It is claimed by her personal representative that her death was occasioned by wrongful acts and omissions of the hospital staff. A suit was started against the principals named herein in January, 1962. It was designated No 44,643, Genesee county. The responsive pleading, which is not included in either appendix, apparently raised the defense of governmental immunity and must further have challenged the action for plaintiff's failure to have precedently complied with the constitutional[2] and statutory[3] requirements of first filing a claim with the proper Genesee county officials. The motion to dismiss was granted on September 26, 1962. If an opinion accompanied the order at that time it has not been made a part of either appendix. On October 4, 1962, plaintiff filed the claim as required. October 23, 1962, it was rejected by the Genesee county board of supervisors. Appeal from its disallowance was duly taken November 13, 1962. Thereupon, pursuant to statute,[4] the claim as filed became "equivalent to the declaration" and defendants again pleaded thereto by special appearance and motion to dismiss supported by affidavit. The trial court denied the motion and set the matter down for trial before a jury. His opinion, on the motion, was dated December 20, 1962. On February 26, 1963, the court, in a brief supplemental opinion, rejected defendants' claim that the grant of the motion to dismiss in the original action (44,-643) operated as a bar to the instant action (47,563) by reason of the plea of *res judicata.* Thereupon,

---

[2] Const 1908, art 8, § 8.

[3] CL 1948, § 46.71 (Stat Ann 1961 Rev § 5.521) ; CL 1948, § 332.160 (Stat Ann 1956 Rev § 14.1100).

[4] CL 1948, § 46.74 (Stat Ann 1961 Rev § 5.524).

defendants made a motion for summary judgment. Affidavits and counteraffidavits were duly filed. This motion was granted and it is in this posture the case reached us on appeal.

Plaintiff asks:

*First:* Should a county continue to enjoy governmental immunity from tort liability?

*Second:* If this Court continues to hold that it should, but only when engaged in a governmental function, was defendant county in this case, in its relationship to plaintiff's decedent, engaged in a proprietary function and thus not governmentally immune?

*Third:* Did plaintiff's claim, as filed, state a cause of action for breach of an implied contract to furnish hospital services, as distinguished from a claim based on negligence?

Before answer to these questions is undertaken, it may not be untoward to review briefly the status of the concept of governmental immunity in our State. This for the reason that in recent years this Court has divided sharply, and in some cases indecisively, in cases involving the doctrine.

First, it is well to note that strictly speaking "sovereign" immunity and "governmental" immunity are not synonymous. True, they have been over the years used interchangeably in decisions, but a delineation may be helpful. *Sovereign* immunity is a specific term limited in its application to the State and to the departments, commissions, boards, institutions, and instrumentalities of the State. The reason is the State is the only sovereignty in our system of government, except as the States delegated part of their implicit sovereignty to the Federal government. US Const, Am 10, provides:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the

States, are reserved to the States respectively, or to the people."

At common law the sovereign was immune from suit by a subject. The common law, by Constitution, is the law of our State:

"The common law and the statute laws now in force, not repugnant to this Constitution, shall remain in force, until they expire by their own limitations, or are changed, amended or repealed." Const 1963, art 3, § 7.

The meaning of the article is readily discernible. The common law as well as statutes abide unless *"changed,* amended or repealed." "Amendment" and "repeal" refer to the legislative process. "Change" must necessarily contemplate judicial change. The common law is not static, fixed and immutable as of some given date. Thus sovereign immunity as a part of the common law obtains only unless and until it is altered by amendment, repeal, or change.

This doctrine, inherited with the common law in Michigan, has never by a majority of this Court been *judicially* "changed" as to the State. Importantly, however, the doctrine was construed by a majority of this Court to have been legislatively repudiated, readopted, and modified. The case which clearly makes this important distinction is *McDowell* v. *State Highway Commissioner,* 365 Mich 268, at p 271:

" 'So far as the State itself is concerned, the doctrine of sovereign immunity as it presently exists in Michigan is a creature of the legislature. The doctrine has been modified by the legislature, abolished by the legislature, re-established by the legislature, and further modified by the legislature.'[5]

---

[5] The quotation is from the State's brief.

"The judiciary has no right or power to repeal
statutes. As said by the attorney general, the legis-
lature has willed that the present defendants be and
remain immune from liability for torts such as these
plaintiffs have alleged. There they must stand,
legally, until the legislature wills to the contrary."

This opinion was signed by a clear majority of
this Court—5 Justices—4 of whom are still members
of this seated Court.

Justice BLACK emphasized this point in that deci-
sion, quoting from *Williams* v. *City of Detroit*, 364
Mich 231, 278. He pinpoints what is encompassed by
the term the *State* when used in relationship to "gov-
ernmental," *i.e.*, "sovereign" immunity:

" 'That doctrine includes within its purview the
State and "its departments, commissions, boards, in-
stitutions, arms or agencies" ' " *McDowell, supra*, p
269.

Thus, as of this decision day under settled law,
the State and its immediate integral parts, enjoy ab-
solute immunity from tort liability by reason of the
negligent acts or omissions of its servants or agents,
except as that liability has been statutorily modified.[6]
Over the years, by judicial construction, this "sov-
ereign" immunity has been transmogrified into "gov-
ernmental" immunity and made applicable to the
"inferior" divisions of government, *i.e.*, townships,
school districts, villages, cities, and counties, but
with an important distinction. These subdivisions of
government enjoyed the immunity only when en-

[6] See PA 1945, No 87 (CL 1948, § 691.141 [Stat Ann 1959 Cum
Supp § 27.3548(41)]), its amendment by PA 1960, No 33, and, fol-
lowing its repeal, its re-enactment in the revised judicature act, PA
1961, No 236, § 6475 (CLS 1961, § 600.6475, Stat Ann 1962 Rev
§ 27A.6475). See, also, currently, PA 1964, No 170 (CL 1948, § 691-
.1401, *et seq.*, Stat Ann 1965 Cum Supp § 3.996[101] *et seq.*), *post.*
See, also, *Minty* v. *Board of State Auditors*, 336 Mich 370.

gaged in "governmental" as distinguished from "proprietary" functions. It would serve no purpose here to retrace the myriad lines of demarcation. It is pertinent to add that the distinction has at times been judicially regarded as a question of fact and not of law, requiring a testimonial or other evidentiary record for determination.

And so the law stood until *Williams* v. *City of Detroit, supra.* There a confusing chapter was added because this Court, though numerically evenly divided as between affirmance and reversal, really represented a 5–3 holding as to the liability of "municipal corporation." For a review of that decision and its effect, see *Sherbutte* v. *City of Marine City,* 374 Mich 48. As the decision in *Williams* is relevant here "municipal corporations" lost their tort immunity for the negligence of their servants, agents, and employees, irrespective of whether the municipal corporation was acting in a "governmental" or "proprietary" capacity.

To recapitulate then, as of today the State and its agencies are absolutely immune (except as legislatively excepted) from tort liability; subdivisions of government, except municipal corporations, are immune when functioning "governmentally," but not "proprietarily," and municipal corporations are without any governmental immunity, as to tort liability.

Thus oriented, we address ourselves to the first question posed by plaintiff-appellant. Restated for decisional purpose here we may rightly inquire: since municipal corporations—and for our purpose here we mean incorporated cities, statutory or home-rule charter—are liable in tort for the negligence of their agents and servants, what distinction in law, logic, or reason is there to maintain a distinction between a city, as above specified, and a county, a township, or a village? We see none. All are creatures

of the Constitution with the powers and immunities
provided by law. In the case of a county which might
historically be differentiated, the Constitutions of
1908 and 1963 both define them as a "body corpo-
rate."[7] Rightfully, we inquire again what distin-
guishes a constitutional "body corporate" from a
"municipal corporation." In candor, we must say
the distinction, if any, is one without a difference.
If someone falls down an unguarded elevator shaft
in the city hall, he recovers if the shaft were negli-
gently maintained. If the identical occurrence even-
tuates in the county courthouse, the village or town-
ship hall, the injured person is without redress. A
tortious act by a city policeman is compensable in
damage, the identical act perpetrated by a county
deputy sheriff, a village or township constable is not.
We should not perpetuate such anomalies.

Our coordinate and coequal division of govern-
ment—the legislature—has seen fit to address itself
to this subject. By PA 1964, No 170, effective July
1, 1965, basic changes are statutorily made in this
doctrine. The title of the act includes this im-
portant statement of purpose:

"An act to make *uniform* the liability of municipal
corporations, political subdivisions, and the State,
its agencies and departments." (Emphasis sup-
plied.)

We further this expressed legislative intent when
we judicially make the application of the generic gov-
ernmental immunity uniform as to all political sub-
divisions. Under our settled law we do not include
the application of sovereign immunity to the State
for the reasons set forth in *McDowell, supra.*

Hence, in the case at bar we hold that Genesee
county enjoys no greater immunity as a constitu-
tional "body corporate" than does a city as a "mu-

---

[7] Const 1908, art 8, § 1; Const 1963, art 7, § 1.

nicipal corporation." This rule is hereby extended to all political subdivisions of government. The State, its departments, commissions, boards, institutions, arms, or agencies are not affected hereby.

We now take up the question whether decision here is to (1) include the case at bar; (2) exclude the case at bar but be made to apply to all cases to be decided hereafter or after an arbitrary control date herein specified; (3) be made applicable to all cases in which a cause of action has accrued, the assertion of which is not barred by other defenses, including but not limited to statutes providing for the limitation of actions.

Because we change prior settled law, it is inevitable that some will be adversely affected hereby, no matter which basis we select.

It would serve little purpose to realign ourselves and to battle again as was done in *Williams, supra,* over the question of total prospectivity, total retrospectivity, or some median variation in the application of the rule. All of the arguments pro and contra are known to us and to the profession. When we overruled the doctrine of imputed negligence as to "a voluntary gratuitous passenger in an automobile, the driver of which was guilty of negligence which was a contributing proximate cause of an accident and injury to such passenger," we did so as to "pending and future cases" as well as to that case itself. See *Bricker* v. *Green,* 313 Mich 218, at p 236, (163 ALR 697). We adopt the same policy here.

The rule of governmental immunity as to all political subdivisions of government is hereby abrogated as it has heretofore been abrogated as to municipal corporations, *i.e.,* cities. No longer is the defense of governmental immunity for tort liability available, irrespective of whether the involved political subdivision is functioning "governmentally" or "proprietarily."

The order granting summary judgment for defendant county is vacated and the case remanded for further proceedings. Under the circumstances of the decision, we award no costs. Having so decided, the other issues raised on appeal need not be discussed.

T. M. Kavanagh, C. J., concurred with O'Hara, J.

Black, J., concurred in result.

Souris, J. (*concurring*). I concur in Mr. Justice O'Hara's decision, the result of which is to overrule *Lewis* v. *Genesee County* (1963), 370 Mich 110.

Mr. Justice O'Hara writes currently to abrogate the doctrine of governmental immunity as applicable to villages, townships, and cities, at least for the interim until the effective date on July 1, 1965, of PA 1964, No 170. In my view, however, the doctrine of governmental immunity already has been abrogated as to municipal corporations—as defined in *Bacon* v. *Kent-Ottawa Metropolitan Water Authority* (1958), 354 Mich 159, to include incorporated villages, fourth-class cities, special charter cities, home-rule cities, charter townships, and school districts—by this Court in our decisions in *Williams* v. *City of Detroit* (1961), 364 Mich 231, and *McDowell* v. *State Highway Commissioner* (1961), 365 Mich 268.*

While I join in the result reached by Justice O'Hara, I cannot subscribe his opinion because of the different views we take of the recent decisions of this Court herein cited.

---

* Perhaps, however, *Sayers* v. *School District No. 1* (1962), 366 Mich 217, suggests that *McDowell's* definition—by reference to *Bacon* —of municipal corporations is subject to contemporary judicial refinement, for in *Sayers* our majority held that a school district continued to enjoy its tort immunity notwithstanding its inclusion in the definition of municipal corporations announced but months before in *McDowell*. Unfortunately, the point was not considered in *Sayers*.

ADAMS, J., concurred with SOURIS, J.

DETHMERS, J. (*dissenting*). I dissent from the opinion of Mr. Justice O'HARA for the reasons stated in the opinion of Mr. Justice CARR in *Williams* v. *City of Detroit,* 364 Mich 231, and, accordingly hold for affirmance. No costs.

KELLY, J., concurred with DETHMERS, J.

SMITH, J., did not sit.