PEOPLE v STEVENSON

Docket No. 66123. Argued October 14, 1981 (Calendar No. 11).—
Decided December 23, 1982.

Ross Stevenson pled guilty in the Kent Circuit Court of assault
with intent to rob while armed in exchange for the dismissal of
a charge of assault with intent to murder. The victim of the
assault died 369 days after being wounded by the defendant,
and the prosecutor charged the defendant with first-degree
murder. The 61st District Court, J. Robert Smolenski, J.,
granted the defendant's motion to quash the complaint and
warrant on the ground that the prosecution was barred by the
common-law "year and a day" rule. The Kent Circuit Court,
Stuart Hoffius, J., affirmed. The Court of Appeals, MacKenzie,
P.J., and Allen and D. F. Walsh, JJ., affirmed. The people
appeal.

In an opinion by Justice Ryan, joined by Chief Justice Fitz-
gerald and Justices Williams and Coleman, the Supreme Court
*held:*

The "year and a day" rule, part of the common law of
Michigan, has outlived its usefulness and is abrogated. The
effect of the abrogation is prospective only.

1. In Michigan, the common law prevails, except as abrogated
by the Constitution, the Legislature, or the Supreme Court.
Under the existing law of the state, the year and a day rule has
not been abrogated and is part of the common law. The lower
courts correctly held that prosecution of the defendant for first-
degree murder was barred by the rule. The Supreme Court has
the duty and the power to change the common law when
required. It need not defer to the Legislature to abolish a
common-law rule by statutory definition. The year and a day
rule may be abolished by the Supreme Court.

2. The year and a day rule provided the irrebuttable pre-

REFERENCES FOR POINTS IN HEADNOTES

[1-5, 7, 8] 15A Am Jur 2d, Common Law §§ 16-18.
[1, 2, 4, 5, 8] 40 Am Jur 2d, Homicide § 14.
  Homicide as affected by lapse of time between injury and death. 60
  ALR3d 1323.
[4] 40 Am Jur 2d, Homicide § 246.
[6] 21 Am Jur 2d, Criminal Law § 488.

sumption that the death of a person which occurred more than a year and a day after receiving an injury was not caused by the injury. The advances of modern science in extending life and providing strong evidence of the cause of death have undermined the wisdom of the presumption. The presumption was wooden and arbitrary from the beginning, since it prevented a conviction of murder even where causation could be proved. Because causation can now be proved medically with much greater frequency and certainty, the rule is simply too often demonstrably wrong to be applied.

3. However, abolition of the rule does not relieve the prosecution of the duty to prove all the elements of a crime, including proximate cause, beyond a reasonable doubt. A murder charge which rests upon uncertain medical speculation relative to the cause of death is not proved beyond a reasonable doubt. Proof of the proximate cause of death in homicide cases is hereafter to be measured by the same standard whether the victim dies within or after a year and a day, proof beyond a reasonable doubt.

4. The abrogation of the rule must be applied prospectively. Retroactive application to the defendant would violate his right to due process by subjecting him to the new rule *ex post facto*. By not applying the abrogation to the defendant, he is not "freed" from criminal responsibility for his acts. He was originally charged with assault with intent to commit murder. The fact that his victim survived for more than a year and a day was no bar to the prosecution of that offense. The prosecutor is barred from so charging the defendant now by the terms of the plea bargain. That bargain provides a separate and additional reason to bar a prosecution for murder in this case.

Justice Levin, joined by Justice Kavanagh, concurred in the dismissal of the complaint charging the defendant with murder, but would retain the year and a day rule. The interests of the state are advanced little, if at all, by abolition of the year and a day rule, its abolition exacerbates problems of proof regarding causation, and it does not secure the defendant's and society's interest in establishing criminal responsibility once and for all at some time.

Affirmed.

101 Mich App 61; 300 NW2d 449 (1980) affirmed.

OPINION OF THE COURT

1. HOMICIDE — YEAR AND A DAY RULE — ABROGATION — PROSPECTIVE APPLICATION.

The common-law year and a day rule, which provided the irrebut-

table presumption that the death of a person which occurred more than a year and a day after an assault was not caused by the assault, and which prevented conviction of a murder even where causation could be proved, has outlived its usefulness and is abrogated; the abrogation is prospective only.

2. HOMICIDE — YEAR AND A DAY RULE — COMMON LAW — ABROGA-
TION.

The common law prevails in Michigan except as abrogated by the Constitution, the Legislature, or the Supreme Court, and the year and a day rule, indisputably a rule of the common law, was not abrogated in Michigan until the Supreme Court so held (Const 1963, art 3, § 7).

3. CRIMINAL LAW — COMMON LAW — SUPREME COURT.

The suggestion that crimes can be defined in Michigan only by statute is not well taken, particularly in the light of the fact that murder is defined by the common law and not by statute in this state, nor is the argument that the Supreme Court lacks the power to change the common law so as to enlarge the scope of criminal liability well taken (Const 1963, art 3, § 7).

4. HOMICIDE — YEAR AND A DAY RULE — ABROGATION — PROXIMATE
CAUSE.

Abrogation of the common-law year and a day rule that the death of a person which occurred more than a year and a day after an assault was not caused by the assault does not relieve the prosecution of the duty to prove all the elements of a homicide, including proximate cause, beyond a reasonable doubt.

5. HOMICIDE — YEAR AND A DAY RULE — ABROGATION — PROSPECTIVE
APPLICATION.

Retroactive application of the abrogation of the year and a day rule which prevented prosecution for a death which occurred more than a year and a day after an assault by a defendant would violate the defendant's right to due process by subjecting him to the new rule *ex post facto* (US Const, art I, § 9; Const 1963, art 1, § 10).

6. PROSECUTING ATTORNEYS — PLEA BARGAINING — BAR TO PROSECU-
TION.

A prosecutor who agrees to charge a defendant with assault with intent to rob while armed instead of assault with intent to murder in exchange for the defendant's plea of guilty is barred

by the terms of the agreement from later charging the defendant with murder upon the death of the victim.

7. COURTS — SUPREME COURT — COMMON LAW.

The Supreme Court has the power and the duty to change the common law when required; it need not defer to the Legislature to abolish a common-law rule by statutory definition (Const 1963, art 3, § 7).

CONCURRING OPINION BY LEVIN, J.

8. HOMICIDE — YEAR AND A DAY RULE — ABROGATION.

*The year and a day rule that the death of a person which occurs more than a year and a day after an assault was not caused by the assault should be retained; the interests of the state are advanced little, if at all, by its abolition, and the problems of proof of causation are exacerbated without securing the defendant's and society's interest in establishing criminal responsibility once and for all at some time.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

Kent County Defender (by *Patrick C. Bowler*) for the defendant.

RYAN, J. In this case we are required to decide the validity of the rule that a murder conviction may not be obtained if the victim of the homicide does not die within a year and a day after the assault.

We hold that the "year and a day" rule is part of the common law of this state; that the rule is hereby abrogated; and that the abrogation of the rule should not, and will not, be given retroactive effect.

On December 15, 1976, defendant Ross Stevenson attempted an armed robbery of the Registrar's Office of Aquinas College in Grand Rapids, Michigan. It appears that while the robbery was in

progress the victim attempted to prevent the crime by jumping on the defendant from behind. A struggle ensued during which two shots were fired, one or both of which struck the victim in the abdomen. The perpetrator escaped without completing the robbery. On December 17, 1976, the defendant was arrested and charged with armed assault with intent to rob and steal, contrary to MCL 750.89; MSA 28.284, as well as assault with intent to murder, contrary to MCL 750.83; MSA 28.278.

The prosecuting attorney and the defendant subsequently entered into a plea bargain under which the charge of assault with intent to murder arising out of the shooting would be dismissed in exchange for the defendant's plea of guilty to the charge of assault with intent to rob. On February 18, 1977, the defendant was convicted upon his plea of guilty of the charge of assault with intent to rob while armed. The charge of assault with intent to murder was dismissed. Although the defendant could have been sentenced to life imprisonment, on April 15, 1977, he was sentenced instead to a prison term of not less than 6, nor more than 15, years, with appropriate credit for time already served.

Meanwhile, the shooting victim's apparent recovery from the gunshot wound proved to be illusory. On December 19, 1977, 369 days after the wound was inflicted, the victim died. An autopsy was performed in which the physician found that the cause of death was infection and hemorrhage resulting from the gunshot wound which had been inflicted over 12 months earlier.

On February 1, 1978, a complaint and warrant were issued against the defendant charging him with first-degree felony murder. On March 23, 1978, the district judge granted the defendant's

motion to quash the complaint and warrant for the reason that the prosecution was barred by the common-law "year and a day" rule. The prosecutor appealed this dismissal to the circuit court and, in an order dated July 12, 1979, the circuit judge affirmed. The prosecutor appealed to the Court of Appeals, which affirmed in a published opinion. 101 Mich App 61; 300 NW2d 449 (1980). We granted leave to appeal. 410 Mich 921 (1981). We affirm.

I

The first argument raised by the prosecutor on appeal is that the Michigan Supreme Court has never "adopted" the year and a day rule. In *Chapman v People,* 39 Mich 357, 360 (1878), Chief Justice CAMPBELL wrote:

"From the earliest history of the common law, all homicides have been regarded as composed of two distinct elements, neither of which has been allowed in theory or in legal practice to merge the other. The injury which causes death is never regarded as constituting the crime of murder or manslaughter. *The death of the victim* not only *within a year and a day,* but also within the same jurisdiction *was the controlling element* which distinguished the guilt of the assailant from a common assault. The time and place of death were always considered as necessary to be averred, and were required to be averred as independent of the averments of assault." (Emphasis added.)

Although the prosecutor correctly characterizes this summary of the common law as obiter dictum, since the holding in *Chapman* was that a fatal variance existed between an indictment which alleged an assault and immediate death in Meridian Township, Ingham County, and proofs which

showed a delayed death in Lansing 15 days later,[1] his argument misses the point. In Michigan, the common law prevails except as abrogated by the Constitution, the Legislature, or this Court. Const 1963, art 3, § 7; *People v Aaron,* 409 Mich 672, 722-723; 299 NW2d 304 (1980); *People v Duffield,* 387 Mich 300, 308; 197 NW2d 25 (1972). The prosecutor has failed to cite any provision of the constitution, any statute, or any decision of this Court abrogating the year and a day rule, and our research satisfies us that the rule has not been abrogated in Michigan.

Unlike the doctrine of felony murder, which was of "questionable origin" *(Aaron,* p 689) and may have been part of the common law "only of Sir Edward Coke" *(Aaron,* p 695), the year and a day rule is well established within the tradition of the common law, dating back as early as 1278.[2] In rejecting the claim that the year and a day rule applied to limit civil liability under the Indiana wrongful death act, the United States Supreme Court noted in *Louisville, E & St L R Co v Clarke,* 152 US 230, 239; 14 S Ct 579, 581; 38 L Ed 422, 424 (1894):

"In cases of murder the rule at common law undoubtedly was that no person should be adjudged 'by any act

[1] Although the year and a day rule as set forth in *Chapman* was quoted 10 years ago by this Court in an opinion by WILLIAMS, J., in *People v Duffield,* 387 Mich 300, 309, fn 6; 197 NW2d 25 (1972), the quotation was dictum in that case as well.

[2] Statutes of Gloucester, 6 Edward 1, ch 9 (1278); 3 Coke, Institutes of the Laws of England, ch 7, p 52 (circa 1620); 4 Blackstone Commentaries, ch 14, p 197; Hawkins, Pleas of the Crown (8th ed, 1824), ch 13, § 9, p 93; 3 Stephen, History of the Criminal Law of England, pp 7, 8; Russell, Law of Crimes (7th ed), p 690; 9 Halsbury, Laws of England (2d ed), § 734, p 428; 3 Chitty, Criminal Law, p 276; 2 Wharton, American Criminal Law, § 1073; 1 Warren, Homicide, p 60; Perkins, Criminal Law, p 605; 40 CJS, Homicide, § 12, p 856; 26 Am Jur, § 46, p 190; *Louisville, E & St L R Co v Clarke,* 152 US 230; 14 S Ct 579; 38 L Ed 422 (1894).

whatever to kill another who does not die by it within a
year and a day thereafter; in computation whereof the
whole day on which the hurt was done shall be reck-
oned first.' 1 Hawkins, Pleas of the Crown, ch 13; 2
Hawkins, Pleas of the Crown, ch 28, § 88; 4 Blackstone,
Commentaries, pp 197, 306. The reason assigned for
that rule was that if the person alleged to have been
murdered 'die after that time, it cannot be discerned, as
the law presumes, whether he died of the stroke or
poison, etc., or a natural death; and in case of life, a
rule of law ought to be certain.' 3 Coke, Institutes of the
Laws of England, p 53."

We are satisfied that the district judge, the
circuit judge, and the Court of Appeals all cor-
rectly held that under the existing common law
the prosecution of this defendant was barred by
the "year and a day" rule.

II

This Court has often recognized its authority,
indeed its duty, to change the common law when
change is required. See *Aaron, supra; Placek v
Sterling Heights,* 405 Mich 638; 275 NW2d 511
(1979); *Serafin v Serafin,* 401 Mich 629; 258 NW2d
461 (1977); *Beech Grove Investment Co v Civil
Rights Comm,* 380 Mich 405; 157 NW2d 213 (1968);
*Myers v Genesee County Auditor,* 375 Mich 1; 133
NW2d 190 (1965). Counsel for defendant argues,
however, that this Court lacks the power to
change the common law so as to enlarge the scope
of criminal liability and cites *In the Matter of
Lamphere,* 61 Mich 105; 27 NW 882 (1886), as
authority for that claim. A careful reading of
*Lamphere* discloses, however, that no such proposi-
tion can fairly be implied from anything written
there. The Court in that case merely held that the
defendant's sentence was too uncertain and indefi-

nite as to the time of its commencement to stand. The Court then went on in obiter dicta to suggest that the Legislature should consider legislation to resolve the practical difficulties associated with consecutive sentencing. What is more important is that no limitation upon this Court's authority to "enlarge" common-law criminal liability appears in Const 1963, art 3, § 7, or can be fairly implied from its language:

"Sec. 7. The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

The suggestion that crimes can *only* be defined by statute is not well taken, particularly in light of the fact that, in Michigan, murder is defined by the common law and not by statute. *Aaron,* p 713. If common-law crimes could only be contracted, not expanded, this would tend to slow needed development of the common law, since once the definition of a crime was narrowed, as in *Aaron,* the Court would lack the power to reverse itself and "expand" liability by readopting, for example, the felony-murder doctrine. Such a "one way" power would unduly and unnecessarily retard the development of the common law in both directions, and we therefore refuse to endorse it.

Recognizing that this Court has the authority to abolish the year and a day rule, the question remains whether the rule has outlived its usefulness and should be abolished. The original rationale for the rule was probably tied to the inability of 13th Century medicine to prove the cause of death beyond a reasonable doubt after a prolonged period of time:

"If he died after that time, it cannot be discerned, as the law presumes whether he died of the stroke or poison, etc., or a natural death; and in the case of life, the law ought to be certain." 3 Coke, Institutes of the Laws of England, p 52.

Even if expert medical testimony concerning causation had been available at that time it would not have been heard, since in the early English courts the jury reached the verdict upon their own knowledge and not upon the testimony of witnesses having personal knowledge of the facts and expert opinion testimony as is the case today. 65 Dickinson L Rev 166, 170 (1961), citing Thayer, *Evidence,* p 174 (1898).

The advances of modern medical science, by extending life and by providing strong evidence of the cause of death, have undermined the wisdom of the irrebuttable presumption that the death of one who expires more than a year and a day after receiving an injury was not caused by the injury. The availability of modern life-sustaining equipment and procedures, see *In re Quinlan,* 70 NJ 10; 355 A2d 647 (1976), raises the specter of the choice between terminating life-support systems or allowing the defendant to escape a murder charge. The presumption was wooden and arbitrary from the beginning, since it prevented a murder conviction even in those rare cases when causation could be proved. Now, when medical causation can be proven with much greater frequency and certainty, the old rule is simply too often demonstrably wrong to be upheld.

Of course, abolition of the rule would not relieve the prosecution of its duty to prove all of the elements of the crime, including proximate causation, beyond a reasonable doubt. A murder conviction which rests upon uncertain medical specula-

tion as to the cause of death is not a case which
has been proved beyond a reasonable doubt. Fears
about murder convictions for death 5, 10, or even
20 years after the injury are therefore unfounded
where proximate cause is proven beyond a reason-
able doubt. If such proof is available, the convic-
tion is justified. No repose or statute of limitations
is available for murder in this state. MCL 767.24;
MSA 28.964.[3]

Recognizing that the year and a day rule is
archaic and should be abandoned, we must decide
whether this Court should take such action or
whether deference to the Legislature is appropri-
ate.

Counsel for defendant argues for deference to
the Legislature's traditional policy of defining
crimes by statute and further notes that the choice
between the alternatives to the year and a day
rule is complex and legislative in nature.[4] As to
the first objection, we simply note that murder is a
common-law crime and the year and a day rule is
a judge-made rule. Under such circumstances,

---

[3] Appellee suggests that the rule should be retained because it
prevents potential violations of other important rights: speedy trial,
cruel and unusual punishment, double jeopardy, and the like. Recog-
nizing that such rights may be implicated in long-delayed prosecu-
tions, we will continue to be vigilant in the enforcement of those
rights where they are shown to have been abridged or denied under
the facts of a particular case. Since none of those objections were
briefed or argued in this Court in this case, we need not consider
them here.

[4] (1) The Court could retain the year and a day rule. (2) The Court
could modify the rule by extending the span of time, for example, to
three years and a day. California Penal Code, § 194. (3) The Court
could extend the rule to any length of time it chooses, perhaps two
years, five years, or ten years. (4) The Court could change the rule
from an irrebuttable presumption to a rebuttable one, but with a
higher burden of proof. *Cf. Serafin v Serafin,* 401 Mich 629; 258 NW2d
461 (1977), requiring clear and convincing evidence. (5) Finally, the
Court could simply abolish the rule entirely, leaving the issue of
causation to the jury in light of the facts and arguments in each
particular case.

courts are particularly well-suited to act; *cf. Placek, supra.* As to the second observation, we note that mere multiplicity of choice or a range of options does not make a decision "legislative". Further, since the Legislature remains free to change the common law, the ultimate decision as to whether to retain the rule or some form of it resides in the Legislature.

We hold, in the exercise of our constitutional authority to shape and advance the common law, that the year and a day rule has outlived its usefulness and is therefore abolished. We do so in accord with the growing trend of modern authority. *Commonwealth v Ladd,* 402 Pa 164; 166 A2d 501 (1960); *State v Sandridge,* 5 Ohio Op 3d 419; 365 NE2d 898 (1977); *State v Young,* 77 NJ 245; 390 A2d 556 (1978); *Commonwealth v Lewis,* 381 Mass 411; 409 NE2d 771 (1980). The only court which has chosen to retain the rule since 1960 was an intermediate appellate court in Maryland. *State v Brown,* 21 Md App 91; 318 A2d 257 (1974). In Michigan, proof of the proximate cause of death in homicide cases is hereafter to be measured by the same standard whether the victim dies before or after a year and a day; namely, proof beyond a reasonable doubt.

### III

The final issue to be decided is whether our abrogation of the year and a day rule can and should be given retroactive effect so as to allow the murder prosecution in this case.

The prosecutor argues that the prohibition against *ex post facto* laws found in US Const, art I, § 9 and Mich Const 1963, art 1, § 10, is not implicated in this case because that bar is directed to

the Legislature; that the year and a day rule is one of evidence or procedure, not substance; that the defendant had fair notice that his conduct was criminal; that the defendant did not actually rely upon the year and a day rule; and that adherence to an archaic legal fiction should not free the victim's killer. We will consider these arguments in the order presented.

It is well recognized that while the *Ex Post Facto* Clause does not apply directly to the judiciary, it is applicable by analogy through the Due Process Clauses of the Fifth Amendment, *Marks v United States,* 430 US 188; 97 S Ct 990; 51 L Ed 2d 260 (1977), and the Fourteenth Amendment to the United States Constitution. *Bouie v Columbia,* 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964). This Court acknowledged the applicability of the *Ex Post Facto* Clause to the judiciary in its holding in *People v Dempster,* 396 Mich 700, 714-718; 242 NW2d 381 (1976). While some courts have held that the year and a day rule is merely a rule of evidence or procedure and may therefore be abolished retroactively,[5] we do not find that characterization controlling.[6] One of the abuses which the colonists intended to correct with the *Ex Post Facto* Clause was acts which

"violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath;

[5] *Commonwealth v Ladd,* 402 Pa 164; 166 A2d 501 (1960), where the year and a day rule was abolished retroactively by judicial decision; *People v Snipe,* 25 Cal App 3d 742; 102 Cal Rptr 6 (1972), where the year and a day rule was legislatively changed to three years and a day after the attack, but before the defense had "vested", the court allowed "retroactive" application.

[6] *Commonwealth v Lewis,* 381 Mass 411; 409 NE2d 771, 775 (1980); see also *Weaver v Graham,* 450 US 24, fns 15, 21; 101 S Ct 960; 67 L Ed 2d 17 (1981).

or the oath of the wife against the husband; or other testimony which the courts of justice would not admit". *Calder v Bull,* 3 US (3 Dall) 386, 389; 1 L Ed 648, 649 (1798) (opinion of Chase, J.).

The key is the importance of the rights concerned and their effect on the defendant, not whether those rights can be characterized as "merely" evidentiary or procedural.

Providing fair notice that conduct is criminal is one of the central values of the *Ex Post Facto* Clause. *Dobbert v Florida,* 432 US 282; 97 S Ct 2290; 53 L Ed 2d 344 (1977); *Bouie v Columbia, supra.* But fair notice is not the sole purpose of the clause. As the Court observed in dictum in *Bouie, supra,* p 353,

"An ex post facto law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates* a *crime,* or makes it *greater* than it was, when committed.'" (Emphasis in original.)

The following definition of an *ex post facto* law from *Calder, supra,* was adopted by reference in *In re Hoffman,* 382 Mich 66, 72, fn 1; 168 NW2d 229 (1969):

"1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder,* p 390.

In *Weaver v Graham,* 450 US 24, 29; 101 S Ct 960; 67 L Ed 2d 17, 23 (1981), the Court defined an *ex post facto* law as follows:

"In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." (Footnotes omitted.)

Again, this is consistent with the intent of the framers of both constitutions to prohibit the abuses of the English Parliament, which had "inflicted greater punishment, than the law annexed to the offense". *Calder, supra,* p 389. A murderer has fair notice that his conduct is criminal, yet this Court would not approve a retroactive increase in the authorized punishment from life imprisonment to capital punishment, if that penalty were imposable. In this case, abolishing the rule retroactively would permit a possible increase in the maximum authorized punishment from life (assault with intent to rob while armed) to mandatory life without the possibility of parole (first-degree murder). Increasing the authorized penalty after the fact does not deny the defendant fair notice of what conduct is criminal, yet it still violates the rule against *ex post facto* criminal laws. Abrogating the year and a day rule in this case would apply this opinion to events occurring before it and would clearly disadvantage the defendant unfairly.

It is also argued that the defendant did not actually rely upon the year and a day rule at the moment he shot the victim. As dissenting Justice Pashman wrote in *State v Young,* 77 NJ 245, 264-265; 390 A2d 556 (1978), quoting Cooley, *Constitu-*

*tional Law,* 23 U Pitt L Rev 263, 265 (1961), "The defendant in this case could not have so regulated his blows as to ensure that his victim would die a month after the year-and-a-day barrier came into existence, nor should due process afford him a right to try". Arguably, the defendant could have relied on the year and a day rule, not in expecting that the victim *would* survive that long, but reasonably expecting that *if* the victim did in fact survive that long, a murder conviction could not result. However, actual or even fictional reliance is not the sole interest protected by due process. The *ex post facto* principle also protects against erratic or arbitrary action improper in a lawgiver. *Weaver, supra,* p 29; *Lewis, supra,* p 775. It would be nothing if not erratic to declare for the first time today, almost five years after the year and a day rule effectively barred a murder prosecution in this case, that such a prosecution could be maintained. The defendant's subjective intent or reliance is simply not controlling in this case. *Young, supra,* pp 254-255. A defendant may not even be aware of various important evidentiary rules or the maximum punishment at the time of the offense, and yet such protections may not be abolished retroactively. See *Calder v Bull, supra; Weaver, supra.* The weight of modern authority supports the proposition that the year and a day rule cannot be abolished retroactively. Only two courts have abolished the rule with full retroactive effect; in *Ladd, supra,* the majority felt free to do so because the rule was said to be merely one of evidence or procedure, while in *Sandridge, supra,* the brief two-page opinion by the judge of the Court of Common Pleas of Cuyahoga County failed to directly address the retroactivity issue. We choose to follow the better reasoned opinions in

*Young, supra,* and *Lewis, supra,* abolishing the rule purely prospectively.

The prosecutor's view that the *Ex Post Facto* Clause only prohibits making illegal what was legal when done is far too narrow. Under the prosecutor's analysis, the Legislature or this Court could retroactively redefine murder to include those cases in which the victim was critically injured, but fully recovered. The retroactive elimination of the requirement that the victim actually die would be justified by the rationale that the defendant did not lack fair warning that his conduct was illegal; that the defendant could not have so regulated his blows as to insure that his victim would be critically wounded but not die from the attack; and that the defendant could not have actually relied upon the victim's surviving the near-fatal attack. Since this reasoning would strip the *Ex Post Facto* Clause of much of its substance, we refuse to accept it. As in *People v Marshall,* 362 Mich 170; 106 NW2d 842 (1961), our decision today is based on our interpretation of both the Michigan Constitution and the Constitution of the United States.

We feel constrained to point out that refusing to abolish the year and a day rule *ex post facto* does not "free" the defendant from criminal responsibility. The defendant was originally charged with assault with intent to commit murder for the attack on the victim. The fact that the victim survived for more than a year and a day was no bar to prosecution for that offense, a felony with a maximum punishment of life imprisonment. The prosecutor is barred from charging that offense now only by the plea bargain in which he agreed to request dismissal of the assault with intent to murder charge (Count II) in exchange for the

defendant's plea of guilty to the charge of assault with intent to rob while armed (Count I). The plea bargain provides a separate and additional reason to forbid a murder prosecution in this case, since to do so would deprive the defendant of most if not all of the benefit of his bargain. It would violate the spirit, if not the letter, of the agreement to allow the prosecutor to obtain a guilty plea by dismissing the assault charge and then at a later date to bring a murder charge based on the very same assault.

Following the defendant's guilty plea, the trial judge sentenced the defendant to a prison term of 6 to 15 years, even though the maximum possible sentence was life imprisonment. The sentencing judge indicated his familiarity with the facts of the attempted robbery and assault, as well as his personal awareness of the seriousness of the wounds of the abdomen suffered by the victim. However, in light of a favorable presentence report and favorable letters from interested parties, including the assistant prosecutor,[7] the circuit judge

---

[7] The text of the letter to the defendant's attorney, included in the lower court file, is as follows:

"This is to recapitulate our office's position in the above matter. I was most impressed by what I consider a repentant armed robber who did not want the victim shot nor even contemplated a shooting. As I indicated, if his story is confirmed by the victim as to the accidental nature of the shooting, we will offer a plea to an assault with intent to commit an armed robbery, § 28.284. We will dismiss the assault with intent to murder upon a successful acceptance of the plea. I will go on the record, if you believe it necessary, to state that Stevenson be given great consideration for confessing to the crime before he really knew how good a case we had against him. I should say that the identification of our 'line-up witness' was so good that she can even describe a very small scar that she had noted on your client.

"While our policy is to consider all armed robberies as a most serious crime deserving a stiff sentence, even for 1st offenders, I will speak to the fact in the presentence report that Stevenson should be given consideration for confessing as opposed to forcing us to have a preliminary examination and a trial—even though the outcome was a foregone conclusion, but not apparent to Stevenson at the time of his admissions."

felt that the sentence imposed would best serve the interests of justice. The prosecutor is now seeking a second conviction and second sentencing in light of the subsequent death of the victim. Clearly the judge lacks authority to vacate a valid sentence and impose a heavier one in light of subsequent events. *People v Barfield,* 411 Mich 700; 311 NW2d 724 (1981); *In re Richards,* 150 Mich 421; 114 NW 348 (1907); *People v Meservey,* 76 Mich 223; 42 NW 1133 (1889). We are convinced that under the facts of this particular case that same result should not be reached by the expedient of obtaining a second conviction based on the same criminal behavior.

For the foregoing reasons the judgment of the Court of Appeals affirming the quashing of the murder indictment is affirmed.

FITZGERALD, C.J., and WILLIAMS and COLEMAN, JJ., concurred with RYAN, J.

LEVIN, J. *(concurring).* We concur in the dismissal of the complaint charging the defendant with murder. We would, however, in reaching that result, retain the "year and a day" rule.

## I

The year and a day rule is so ancient that it is unlikely that anyone can say with confidence how it came to be part of the law and why it has survived as long as it has. It may, indeed, be based in part on, and have survived in part because of, the uncertainty of medical judgments regarding cause and effect. But it is as likely that the real root of the rule is something that is unrelated to the rationale advanced by the majority. It has been observed that rules of law often are adopted

for reasons unrelated to the reasons which may justify the retention of the rule by subsequent generations.[1]

It misfocuses the inquiry to postulate a reason for this rule and then to say that reason no longer obtains and therefore the rule should no longer be retained without considering whether the rule serves some other purpose. Before discarding this rule, the Court should consider the potential consequences of abolition of the rule and whether there may be other reasons why it should be retained. What are the advantages and disadvantages of eliminating the rule? Will abolishing the rule make things better or create other problems that perhaps are as difficult as, or more difficult than, those which result from its retention?

II

While medical science has most assuredly advanced in the hundreds of years since the rule first became part of the common law, problems of proving or establishing with assuredness whether a death was caused by wounds persist. Despite the progress of medical science, uncertainty about whether wounds were the cause of death increases with the passage of time and medical opinions will

---

[1] "A very common phenomenon, and one very familiar to the student of history, is this. The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the custom, belief, or necessity disappears, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and enters on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received." Holmes, *The Common Law,* p 5 (1881) (Boston: Little, Brown & Co, 1938).

differ. The prosecutor will present medical testimony that death was caused by the wounds. The defendant will generally offer medical testimony that the wounds did not cause death. Because, where the death occurs a year or years after the wounds, there will often or generally be an honest difference of opinion regarding the cause of death, there is still a need for some time limit as an element of the offense, be it this rule or another.

## III

We believe that in addition to its cause and effect justification, the year and a day rule reflects recognition that murder is different from other offenses in that almost every other offense is completed at the time of the trespass and cannot evolve with the passage of time into another offense. An accused charged with robbery, larceny, arson, or rape commits the offense, if at all, within a relatively short period of time. So too with an assault which does not result in death. But injuries can result in death hours, days, months, or years later.

Apart from the difficulty of establishing cause and effect with assurance, common-law judges may have thought the question whether the assailant should be exposed to prosecution for murder should be resolved within some period of time so that it will be clear once and for all whether in the eyes of the law the aggravated offense has or has not been committed.

The concept of law proceeds on the assumption that rights and responsibilities are determinable at some point. A rule of law which fails to provide such definition fails to provide the certainty that it

should seek to provide. The need for repose, for certainty in the affairs of men, requires that the criminal responsibility of the assailant should be established once and for all at some time. Without a time limit, a year and a day, two years and two days, five years and five days, the prosecutor can be importuned to prosecute, and the assailant can be subjected to criminal prosecution. Common-law judges may have seen this as unwise and unfair both from society's point of view and the accused's point of view. In all events, it is unwise and unfair to institute such open-ended liability.

It begs the question to say that there is no statute of limitations on prosecutions for murder. Heretofore, it has not been murder unless the victim dies within a year and a day. The year and a day rule is so ancient that the statutes providing no limitations for prosecutions of murder were clearly passed with reference to that concept. If it was the legislative purpose to overrule the year and a day rule, that legislative intent has not yet been perceived nor declared even in the opinion of the Court.

## IV

Abolition of the year and a day rule is said to further the state's interest in the prosecution of murderers. However, this interest is furthered little, if any, by the rule's abolition.

In Michigan, first-degree murder carries a mandatory life sentence.[2] Second-degree murder is punishable by any term of years or life imprisonment, at the discretion of the court.[3] A charge of assault with intent to murder carries with it the same

[2] See MCL 750.316; MSA 28.548.

[3] See MCL 750.317; MSA 28.549.

range of punishment as second-degree murder.[4] If the victim of an assault does not die, a defendant can be charged with and found guilty of assault with intent to murder and sentenced to life imprisonment. All the facts surrounding the crime, except the victim's death, are available to the jury and judge after the assault. The state's interest in punishing persons who commit murderous assaults is enhanced little, if at all, by the rule's abolition.

Weighing against the state's interest is the sword of Damocles raised by the rule's abolition:

"If there is one thing which the criminal law must be, if it is to be recognized as just, it must be specific and definitive. To compel a person to go through life with a potential murder charge hanging over his head when he is ready and available to be tried on any immediate charge comes close to violating [his constitutional rights]. *Commonwealth v Ladd,* 402 Pa 164, 200; 166 A2d 501 (1960) (Musmanno, J., *dissenting).*

With the abolition of the rule, the specter of prosecution for murder will loom over persons whose actions might be said to have caused a death an indeterminate number of years after the assault.

## V

Because the state's interests are advanced little, if at all, by the abolition of the year and a day rule and its abolition exacerbates problems of proof regarding causation and does not secure a

---

[4] See MCL 750.83; MSA 28.278.

defendant's and society's repose interest, we would retain the rule.

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.